OPINION
{¶ 1} Plaintiff-appellant, Anna L. Bates ("appellant"), appeals from the January 13, 2004 judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, which, inter alia, denied her December 3, 2001 motion to modify child support, and granted defendant-appellee Randy F. Bates' ("appellee") January 2, 2001 motion to modify child support. For the reasons that follow, we affirm.
 {¶ 2} The parties were married on June 24, 1978 and had three children, Adam, born May 12, 1980; Anthony, born May 26, 1985; and Alexander, born January 4, 1987. The marriage was terminated by decree of dissolution on September 12, 1996. Pursuant to the original decree of dissolution, appellant was designated as the residential parent and legal custodian of Anthony and Alexander, and appellee was designated the residential parent of Adam. Appellee was originally ordered to pay child support in the sum of $861.90 per month for two children, including poundage.
 {¶ 3} Subsequent to the final decree, the parties filed numerous post-decree motions, resulting in various orders. In particular, the parties filed motions to modify child support on June 30, 1998 and on July 20, 1998. At the time the motions were filed, appellant was a partner in a law firm, and appellee was employed in the construction industry. The court held an evidentiary hearing on these motions over several days, including March 11, March 24, June 11, September 14 and September 15, 1999. After the hearing, in January 2000, appellee left the construction business, and he and his current wife began operating a convenience store.
 {¶ 4} On February 15, 2000, the court granted appellant's motion for modification.[1] The court found a change of circumstances had occurred because Adam voluntarily left appellee's home and began living with appellant. The court stated appellant's proposed child support worksheet was "equitable" and "comports with current law."[2] (February 15, 2000 Decision at 1.) Using appellant's child support worksheet, the court found there was a disparity of income between the parties supporting a downward deviation of child support. As such, the court ordered appellee "to continue to pay support in compliance with the prior order of the court in the amount of $436.14 per child per month." (February 15, 2000 Decision at 2.) For the period of July 1, 1998 until April 12, 1999, the court ordered appellee to pay the sum of $1,308.42 for three children, plus a two percent processing charge. For the period beginning April 13, 1999, and thereafter, the court ordered appellant's child support obligation for two children was $436.14 per child per month, for a total of $872.28 per month, plus the appropriate processing charge. The court journalized its decision on March 16, 2000.
 {¶ 5} On January 2, 2001, and on December 3, 2001, the parties filed the motions to modify child support at issue in this appeal. The relevant facts adduced at the February 6, 2002 hearing regarding the parties' motions consist of the following.[3]
 {¶ 6} At the time the parties filed their motions for modification of child support, appellant had maintained her practice in a partnership, and appellee and his current wife were still operating the convenience store. Appellee closed the store in June 2001 because "it was not making any money."[4] (February 6, 2002 Tr. Vol. II at 188.) Because "he was still not coming anywhere close to making the income that was required to try to meet the commitments that were placed on him, [appellee] made the decision to go back to framing." Id. at 192. Between the end of June and beginning of July 2001, appellee formed a business known as Randy Bates Carpentry. As the owner of the company, appellee testified his income was $26,000 per year.
 {¶ 7} In October 2001, appellee transferred assets he used to operate Randy Bates Carpentry to Stewart Mickelson[5] ("Mickelson"), appellee's stepson, who formed a new business known as Bates Mickelson. Appellee testified he "gave up trying to operate a business basically because of [appellant] garnishing my bank accounts." (February 6, 2002 Tr. Vol. III at 28.) Appellee stated that if he had not transferred his business, he would not have had funds left to pay for supplies or employees because of appellant's attempts to engage in collection efforts on a prior judgment. After appellee transferred his assets to Mickelson, he became a subcontractor employed by Mickelson at the salary of $26,000 per year. Id. at 52.
 {¶ 8} John Fenimore ("Fenimore"), a certified public accountant, testified on behalf of appellant. Fenimore testified that appellee understated his income and overstated his expenses when he operated Randy Bates Carpentry, and provided documentation in support of these conclusions. Fenimore testified he examined multiple checks in rounded amounts, and counter-endorsed checks to appellee's employees, all which indicated a possible "kickback" to appellee. Further, Fenimore testified that appellee's transfer of Randy Bates' Carpentry was a way for appellee to avoid income, as he estimated the value of the business was $60,000.
 {¶ 9} Regarding Bates Mickelson, Fenimore stated the company withdrew money from the company's savings account, and distributed that money to pay business expenses. Fenimore concluded that this practice was put in place to circumvent an audit trail. Fenimore testified the profit and loss statement improperly included personal tax payments of Mickelson as an expense, and possibly represents the concealments of payments to appellee. Finally, Fenimore testified that the analysis of appellee's income from all sources in 2001 yielded an annual income of $80,494, and that his 1998 annual income was $76,646. Fenimore did not offer testimony regarding appellant's income, as the sole issue in contention was appellee's income for purposes of calculating child support.
 {¶ 10} During cross-examination, Fenimore acknowledged that legitimate business reasons existed to refute his conclusions regarding appellee's income. See, generally, (Tr. Vol. II 56-125.) In particular, Fenimore admitted the employees' checks he concluded were possible "kickbacks" to appellee could have been bonuses, cash advances or mistakes in payment. (Tr. Vol. II at 83.) Further, Fenimore testified he might have disallowed some of appellee's justifiable business expenses listed on his financial statements because the transactions occurred beyond the cutoff date he used in his analysis. Fenimore testified he did not make a conclusion regarding what appellee should have been paid "for the various services" he provided to Randy Bates Carpentry. Id. at 113.
 {¶ 11} On September 11, 2003, the court, inter alia, granted appellee's motion to reduce child support and denied appellant's motion for an increase in child support. In its decision, the court adopted the worksheet prepared by appellee, which indicated appellant's annual income was $65,000 and appellee's annual income was $26,000. The court decreased appellee's child support obligation for Alex and Anthony to $181.34 per child, per month, plus a two percent processing charge, for a total of $369.93 per month effective January 2, 2001. Finally, the court determined that Mickelson had not paid fair consideration for the assets and awarded a judgment against Mickelson to appellant for $59,500.[6]
The court journalized its decision on January 13, 2004 "based on the evidence presented" and the written closing arguments of the parties.
 {¶ 12} On appeal, appellant raises the following assignments of error:[7]
I. THE COURT ABUSED ITS DISCRETION BY ADOPTING THE CHILD SUPPORT WORKSHEET SUBMITTED BY DEFENDANT-APPELLEE.
II. THE COURT ERRED WHEN IT DID NOT DETERMINE THAT THE DEFENDANT-APPELLEE WAS VOLUNTARILY UNDEREMPLOYED, TO THE DETRIMENT OF THE PLAINTIFF-APPELLANT.
 {¶ 13} In her first assignment of error, appellant argues the court abused its discretion through its adoption of the child support worksheet submitted by appellee in his closing arguments. Before we reach the merits of appellant's assignment of error, we must first address appellee's argument that appellant waived any issues regarding the substance of appellee's proposed child support worksheet, which was submitted for the first time with his closing argument. Appellee contends appellant's only argument at the trial court level was that his worksheet was not submitted timely under the local rule.
 {¶ 14} Generally, arguments raised for the first time on appeal which could have been raised before the trial court are waived. Gerlach v.Gerlach, Franklin App. No. 03AP-22, 2004-Ohio-1607 at ¶ 17. Although she did not file a motion to strike the worksheet, our review of appellant's closing arguments indicates she did argue in opposition to the worksheet submitted by appellee at the first available opportunity, and raised the arguments at the trial court level that she assigns as error in the present appeal. Specifically, appellant argued the worksheet submitted by appellee must be rejected because it did not reflect both parties were self-employed or that appellee paid local taxes. (Appellant's Rebuttal to Appellee's Closing Argument at 3-4.) Therefore, we will review appellant's assignment of error as presented.
 {¶ 15} In support of her first assignment of error, appellant first contends the worksheet was erroneous because it does not reflect that both parties were self-employed at the time appellee filed his motion to modify child support. Appellant emphasizes the worksheet does not contain entries in section two for "gross receipts from business," "ordinary and necessary business expenses" or any adjustments for social security taxes paid. Thus, appellant argues the worksheet fails to comply with R.C.3113.215, and constitutes reversible error. See Marker v. Grimm (1992),65 Ohio St.3d 139, 601 N.E.2d 496.
 {¶ 16} Appellant cites Ohlemacher v. Ohlemacher (2003), Lorain App. No. 02CA008108, 2003-Ohio-368 in support of her argument. In Ohlemacher,
the trial court computed child support by basing the modified child support award on the adjusted gross income of the parties rather than their gross income as required by statute. In reversing the trial court's decision, the Lorain County Court of Appeals found the trial court's failure to comply with the statutory mandates of R.C. 3113.215, as repealed by R.C. 3119.01, constituted reversible error.
 {¶ 17} In order to modify a prior child support order, the court must first determine whether the movant has demonstrated a substantial change in circumstances. The movant must present evidence to demonstrate a substantial change in circumstances exist at the time of the hearing from the circumstances that existed when the child support order was made.Yark v. Yark (Jan. 12, 2001), Fulton App. No. F-00-010, 2001 Ohio App. LEXIS 60 at *13; Pinkham v. Pinkham (Dec. 11, 1979), Franklin App. No. 79AP-421. The substantial change in circumstances must not have been contemplated at the time of the original, or most recent order. R.C.3113.215(B)(4);[8] Baire v. Baire (1995), 102 Ohio App.3d 50, 54,656 N.E.2d 984. If such a change is demonstrated, the court must then make an appropriate modification. Rossi v. Rossi (Sept. 15, 1998), Franklin App. No. 97AP-1584.
 {¶ 18} When the modification is based on a change in income, the trial court must use a child support computation worksheet to recalculate the child support obligation in order to determine whether a substantial change in circumstances had occurred. R.C. 3113.215(B)(4). If the new worksheet changes the previous calculation by at least ten percent, the previous child support order must be modified. Tonti v. Tonti, Franklin App. No. 03AP-494, 2004-Ohio-2529.
 {¶ 19} In Marker, supra, the Supreme Court of Ohio held, at the syllabus:
1. A child support computation worksheet, required to be used by a trial court in calculating the amount of an obligor's child support obligation in accordance with R.C. 3113.215, must actually be completed and made a part of the trial court's record.
2. The terms of R.C. 3113.215 are mandatory in nature and must be followed literally and technically in all material respects.
3. Any court-ordered deviation from the applicable worksheet and the basic child support schedule must be entered by the court in its journal and must include findings of fact to support such determination.
The Marker court reasoned that including a completed child support worksheet in the court record will ensure that the literal requirements of R.C. 3113.215 have been followed, and that an order or modification is subject to meaningful appellate review. Id. at 142.
 {¶ 20} A trial court's modification of a prior child support order is within the broad discretion of the trial court and will not be disturbed absent an abuse of discretion. Woloch v. Foster (1994),98 Ohio App.3d 806, 810, 649 N.E.2d 918. An abuse of discretion is "more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450, N.E.2d 1140.
 {¶ 21} In this case, the worksheet delineates the parties' income as annual gross income on line one, instead of self-employment income on line two. We are mindful that the overriding concern in calculating child support is the best interest of the child for whom support is being awarded. Marker, supra, at 141. Thus, the pertinent issue is not on which line the income is placed, but whether the trial court's determination of the parties' total income was proper. See Wolfe v. Wolfe, Franklin App. No. 04AP-409, 2005-Ohio-2331 at ¶ 14 ("whether income is placed on line one or line two of the child support worksheet, the figures on the lines are added together in line seven so the issue is not on which line the item is place, but, rather, whether it is properly included as income in this case").
 {¶ 22} Our review of the record reveals no evidence of improperly withheld "gross receipts from business," "ordinary and necessary business expenses" or any adjustments for social security taxes paid. Furthermore, we fail to see how including these items would result in anything other than a reduction in appellee's income, thus decreasing his support obligation. Therefore, regardless of whether the parties' income should have been placed on line one or line two of the child support worksheet, the total income would not have been different, and therefore would not implicate the meaningful appellate review at issue in Marker.
 {¶ 23} In her second argument under her first assignment of error, appellant contends the worksheet erroneously contains a reduction in appellee's income for local taxes. Appellant argues that there was no evidence presented that appellee paid local taxes. Further, appellant contends that neither his 2002 federal income tax return nor his 2001 form 1099 reflects any local income tax paid or withheld. By crediting appellee with local income taxes he did not pay, appellant contends appellee's child support obligation is improperly reduced.
 {¶ 24} Appellant cites Baus v. Baus (1991), 72 Ohio App.3d 781,596 N.E.2d 509, for the proposition that the taxes must actually be paid or expected to be paid so that "a parent's gross income is not reduced by any sum that was not actually expended in the year used for computing child support." Id. at 784. In Baus, the plaintiff argued the trial court erred in computing the defendant's gross income for calculation of his child support by holding equipment costs and leasehold improvements from the defendant's business were ordinary and necessary business expenses, and subtracting these items from his self-generated income. The plaintiff relied on R.C. 3113.215(A)(4), which excludes "depreciation expenses and other non-cash items that are allowed as deductions on any federal tax return" from ordinary and necessary business expenses.
 {¶ 25} The Wayne County Court of Appeals stated R.C. 3113.215(A)(4) was "designed to ensure that a parent's gross income is not reduced by any sum that was not actually expended in the year used for computing child support." Id. at 784. However, the court found this statute was inapplicable because the items deducted by the trial court were actually cash items expended in connection with ordinary and necessary business expenses. Thus, we find appellant's reliance on Baus is misplaced, as it did not involve R.C. 3113.215(E), the statute section at issue in this case.
 {¶ 26} Appellee contends the trial court's deduction of local income taxes was proper. Appellee contends the worksheet clearly allows for a deduction for an estimate of the local taxes to be paid. We agree.
 {¶ 27} In order to interpret a statute, a court must give effect to the General Assembly's intent. Colbert v. City of Cleveland,
99 Ohio St.3d 215, 790 N.E.2d 781, 2003-Ohio-3319, at ¶ 12. Words and phrases shall be read in context and given their plain and ordinary meaning, unless the legislature applied a specific meaning to the word or phrase.D.A.B.E, Inc. v. Toledo-Lucas Cty. Bd. of Health, 96 Ohio St.3d 250, 255,773 N.E.2d 536, 2002-Ohio-4172; State ex rel. Poignon v. Ohio Bd. of Pharm., Franklin App. No. 03AP-178, 2004-Ohio-2709. An unambiguous statute "means what it says," and no additional interpretation is necessary. Millstone Dev., Ltd. v. Berry, Franklin App. No. 03AP-531, 2004-Ohio-1215 at ¶ 21. A statute is ambiguous only when its language is reasonably susceptible to more than one interpretation. Family MedicineFound., Inc. v. Bright, 96 Ohio St.3d 183, 185, 772 N.E.2d 1177,2002-Ohio-4034.
 {¶ 28} Here, a plain reading of R.C. 3113.215(E) indicates the child support worksheet allows for a deduction for local income taxes "actually paid or estimated to be paid." Because the worksheet unambiguously does not require that the taxes are actually paid, this portion of appellant's first assignment of error is without merit.
 {¶ 29} For the foregoing reasons, appellant's first assignment of error is overruled.
 {¶ 30} In her second assignment of error, appellant contends the court erred when it did not determine that appellee was voluntarily underemployed.
 {¶ 31} Prior to imputing income to a parent for calculating child support, a trial court must find the parent is voluntarily underemployed. Rock v. Cabral (1993), 67 Ohio St.3d 108, 616 N.E.2d 218. R.C. 3113.215(A)(1)(b) defines income, for a parent who is unemployed or underemployed, as "the sum of the gross income of the parent, and any potential income of the parent." R.C. 3113.215(A)(5) states the court must determine appellee's "potential income" from the parent's employment potential and probable earnings based on: (1) the parent's recent work history; (2) the parent's occupational qualifications; and (3) the prevailing job opportunities and salary levels in the community in which the parent resides. See Harmon v. Harmon (Sept. 19, 1996), Franklin App. No. 96APF02-183. The burden of proving a parent is voluntarily underemployed is placed on the parent making the claim. Trenkamp v.Trenkamp (Dec. 1, 2000), Hamilton App. No. C-000203; Harbour, supra. A trial court does not abuse its discretion by not imputing income to a parent when the other parent does not present evidence of the unemployed parent's occupational qualifications, or the prevailing job opportunities and salary levels in his or her community. Id.
 {¶ 32} Appellant presents two arguments in support of her position that appellee was voluntarily underemployed. First, appellant argues that appellee willingly left his employment in the construction business to pursue the operation of a convenience store without consideration of the impact upon his child support obligations. Second, appellant contends appellee voluntarily reduced his income by the transfer of Randy Bates Carpentry to Mickelson in 2001. Appellant emphasizes appellee's testimony that he ceased to operate Randy Bates Carpentry in order to frustrate appellant's attempts to collect on her prior judgment. As such, appellant argues the trial court abused its discretion by not finding appellee was voluntarily underemployed and in turn imputing the income from which the transferred business was capable of generating.
 {¶ 33} Appellant relies on Fenimore's testimony that appellee had reentered the construction business in 2001 and had the same income as he did in 1998 which led to the March 2000 child support obligation determination. Appellant emphasizes Fenimore's testimony that prior to the time he operated the convenience store, appellee earned $76,646 per year in the construction business. Appellant asserts that appellee's earning history, as established through Fenimore's testimony and the prior child support order, establish appellee's potential income.
 {¶ 34} Appellant submits Foster v. Foster (2002), 150 Ohio App.3d 298,780 N.E.2d 1041, is analagous to the instant matter. In Foster, the appellant voluntarily sold his interest in two corporations "in order to pursue a new business opportunity, one that he hope[d] [would] be even more lucrative than his prior ventures." Id. at 305. This decision resulted in an immediate effect of reducing the appellant's annual income of over $30,000. The trial court found appellant was voluntarily underemployed "to the extent he chose to lower his income in the immediate future." Id. Relying on Woloch, supra, the Butler County Court of Appeals affirmed the decision of the trial court finding the appellant was voluntarily underemployed.
 {¶ 35} We find appellant's reliance on Foster is misplaced, as that case did not discuss appellant's burden of providing evidence of appellee's occupational qualifications, or the prevailing job opportunities and salary levels in the community. Rather, we adhere to our precedent stated in Harbour, and the plain language of R.C. 3113.215(A)(5) in our analysis of the evidence. As previously stated, this court has recently held that a trial court does not abuse its discretion by not imputing income to a parent when the other parent fail to provide evidence of that parent's occupational qualifications, or prevailing job opportunities and salary levels in his community, as required by R.C.3113.215(A)(5). Harbour.
 {¶ 36} At the hearing, appellee testified he made the decision to close the convenience store and go back to working in the construction industry because he "was still not coming anywhere close to making the income that was required to try to meet the commitments that were placed on him." (Tr. Vol. II at 192.) Appellee testified that he earned $26,000 a year when he operated Randy Bates Carpentry. After the transfer of the business to Mickelson, appellee testified his income remained at $26,000. Regardless of the transfer of Randy Bates Carpentry, it was appellee's position that his annual income remained at $26,000. Based on the evidence presented, the court concluded appellee's income was $26,000 at the time of the hearing. Thus, it is apparent the trial court determined appellee met his burden of proving a substantial change in circumstances existed at the time of the hearing from the circumstances that existed when the child support order was made. Yark. Because appellant did not challenge the trial court's overall modification of child support on appeal, our focus is solely on whether the trial court erred by not finding appellee was voluntarily underemployed.
 {¶ 37} In accordance with Harbour, our review of the record in this case reveals appellant offered no evidence regarding appellee's occupational qualifications at the time of the hearing, or the prevailing job opportunities and level of income that someone with appellee's experience and ability should earn. R.C. 3113.215(A)(1)(b). At the hearing, Fenimore admitted he did not make a determination as to what appellee should have been paid "for the various services" he provided to Randy Bates Carpentry. Id. at 113. Fenimore's testimony that appellant earned the same in 2001 as he did in 1998 falls short of the evidence necessary to establish that appellee's occupational qualifications had not changed to enable him to perform the same type of work. Because appellant did not meet her burden under R.C. 3113.215(A)(5), we find the trial court did not abuse its discretion in failing to find appellee was voluntarily underemployed for purposes of calculating child support. As appellant failed to establish that appellee was voluntarily underemployed, we need not reach her argument that income should have been imputed for the amount Randy Bates Carpentry was capable of making.
 {¶ 38} Finally, it is well-established that a trial court, particularly a domestic relations court, is in the best position to resolve disputes of fact, and assess the "credibility of witnesses" and the weight to be given to their testimony. Tonti, supra at ¶ 109; Statev. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus; Rogers v. Rogers (Sept. 2, 1997), 10th Dist. No. 96APF10-1333, 1997 Ohio App. LEXIS 4033. ("The trial court is free to believe all, part, or none of a witness' testimony.")
 {¶ 39} In this case, the parties offered competing testimony regarding appellee's income. Fenimore testified appellant understated his income and provided documents in support of his conclusions. Bates testified his income was $26,000 at the time of the hearing, and that his income remained at $26,000 after he transferred the business to Mickelson. From this evidence, the trial court determined appellant's annual income was $26,000. We decline to substitute our judgment for the trial court, who is in the best position to weigh the witnesses' credibility and the weight to be given to their testimony. Tonti, supra, citing Hunt v. Hunt
(1989), 63 Ohio App.3d 178, 578 N.E.2d 498. Accordingly, appellant's second assignment of error is overruled.
 {¶ 40} For the foregoing reasons, appellant's first and second assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations is affirmed.
Judgment affirmed.
Klatt and Deshler, JJ., concur.
DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.
[1] In its February 15, 2000 entry, the court indicated appellee withdrew his July 10, 1998 motion on the record.
[2] Appellant's worksheet listed her income as $60,000 and appellee's income as $44.000.
[3] In its final entry, the court stated that "various hearings" were conducted regarding the parties' motions, and a final hearing was conducted on February 4, 2003. The following transcripts were included in the record for our review: (1) the July 17, 1998 deposition of Joyce Ann Bates; (2) appellee's August 25, 1998 deposition; (3) the November 3, 2000 hearing; and (4) the February 6, 2000 hearing.
[4] Appellee testified the net profit for the convenience store in 2000 was approximately "Eighteen, 19,000 [dollars.]" (November 3, 2000 Tr. at 246.)
[5] On January 22, 2002, appellant moved to add Mickelson as a party defendant, which was granted by the trial court on January 29, 2002. Mickelson is not a party in this appeal.
[6] This judgment is not at issue in this appeal.
[7] Appellant does not specifically assign as error that the trial court abused its discretion by granting appellee's motion for a reduction in child support or denying her motion for an increase in child support.
[8] At the time this case was filed, R.C. 3113.215, repealed, effective March 21, 2001, governed the procedures a trial court must follow when modifying child support. Accordingly, we will review appellant's assignments of error under this statute. Harbour v. Ridgeway, Franklin App. No. 04AP-350, 2005-Ohio-2643 at ¶ 18.