[Cite as *Habib v. Shikur*, 2018-Ohio-2955.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Mohammed Habib, | : | |
| Plaintiff-Appellant, | : | No. 17AP-735 |
| v. | : | (C.P.C. No. 12JU-12886) |
| Hawa Shikur, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on July 26, 2018

**On brief:** *Ray J. King*, for appellant. **Argued:** *Ray J. King*.

**On brief:** *James C. Lee*, for appellee. **Argued:** *James C. Lee*.

APPEAL from Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch

SADLER, J.

{¶ 1} Plaintiff-appellant, Mohammed Habib, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, in favor of defendant-appellee, Hawa Shikur. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} The parties have never been married but have three minor children together. Appellant has been paying court-ordered child support for the three minor children since 2012. Appellant also has three children living in Ethiopia and for whom he claims to pay court-ordered child support.

{¶ 3} On March 9, 2016, pursuant to R.C. 3119.60 through 3119.71, the Franklin County Child Support Enforcement Agency ("FCCSEA") notified the parties of a proposed administrative adjustment to the current child support order, raising the amount of child support to be paid by appellant to $379.39. On March 28, 2016, an Administrative Hearing Officer ("AHO") conducted a hearing on the matter. On September 22, 2016, the AHO issued a decision modifying appellant's child support obligation in accordance with the administrator's recommendation.

{¶ 4} Both parties disagreed with the hearing officer's decision and requested an adjustment court hearing. On December 22, 2016, FCCSEA moved to intervene in the case. On January 4, 2017, a magistrate held a hearing on the parties' request for adjustment.

{¶ 5} At the hearing before the magistrate, appellant testified that he works as a self-employed taxi driver and that his net income for the previous year was $14,685.48. Appellant also testified that in 2016 he paid $1,800 in court-ordered child support for his children living in Ethiopia. Appellant acknowledged that he claimed the dependency exemption for his three children with appellee when he filed his 2016 federal income tax return and that he received a refund of more than $5,000.

{¶ 6} On February 15, 2017, the magistrate issued a decision in the matter. The magistrate ordered appellant to pay child support in accordance with guidelines of $183.78 per month for each child plus a processing charge and $38.58 per month in cash medical support plus a processing charge. The magistrate also ordered the parties to each pay 50 percent of the cost of medical expenses exceeding the amount paid by appellant. The magistrate awarded the child dependency tax exemption for each of the three children to appellee.

{¶ 7} On March 2, 2017, appellant filed the following objections to the magistrate's decision:

> 1. The Magistrate failed to properly interpret O.R.C. 3119.05(A) and (B), and The Magistrate erred in her child support worksheet wherein she provided zero deductions for ordinary and necessary business expenses, and for Plaintiff's child support payments to his children in Ethiopia.
>
> 2. The Magistrate erred in awarding all three (3) income tax exemptions to Defendant.

3.  The Magistrate ignored the requirements of O.R.C. 3119.08.

{¶ 8}    The trial court issued a decision and entry on September 29, 2017 overruling appellant's objections and adopting the magistrate's decision.  Appellant timely appealed to this court from the trial court decision.

## II.  ASSIGNMENT OF ERROR

{¶ 9}    Appellant assigns the following as trial court error:

The trial court erred in overruling Appellant's objections to the Magistrate's Decision.

## III.  STANDARD OF REVIEW

{¶ 10} Pursuant to Juv.R. 40(D)(4)(d), "[i]f one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections.  In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law."  Thus, " '[a] trial court considering a party's objections to a magistrate's decision must independently assess the facts and conclusions contained in the magistrate's decision, thereby undertaking the equivalent of a de novo determination in light of any filed objections.' "  *In re J.P.*, 10th Dist. No. 16AP-61, 2016-Ohio-7574, ¶ 13, quoting *In re H.D.D.*, 10th Dist. No. 12AP-134, 2012-Ohio-6160, ¶ 90.  "Appellate courts 'generally review a trial court's adoption, denial or modification of a magistrate's decision for an abuse of discretion.' "  *In re D.S.*, 10th Dist. No. 15AP-487, 2016-Ohio-2810, ¶ 9, *rev'd on other grounds*, 152 Ohio St.3d 109, 2017-Ohio-8289, quoting *Brunetto v. Curtis*, 10th Dist. No. 10AP-799, 2011-Ohio-1610, ¶ 10.  "However, where the appeal from the trial court's action on a magistrate's decision presents only a question of law, the standard of review is de novo."  *In re D.S.* at ¶ 9.

## IV.  LEGAL ANALYSIS

{¶ 11} In appellant's assignment of error, appellant challenges three distinct aspects of the trial court's ruling: the amount of his child support obligation, the allocation to appellee of the federal income tax deduction for the three minor children, and his parenting time.  For the reasons that follow, we find that the trial court did not err with regard to these issues.

**A. Child Support**

{¶ 12} Appellant claims the trial court erred when it found appellant failed to provide necessary evidentiary support for certain business expenses allegedly incurred in generating his self-employed income as a taxi driver and by not giving him credit for child support payments made for his children in Ethiopia. We disagree.

{¶ 13} Appellant first contends the trial court erred when it adopted the magistrate's determination regarding his yearly gross income. "The underlying purpose of Ohio's child support legislation * * * is to meet the current needs of the minor child." *Harbour v. Ridgeway*, 10th Dist. No. 04AP-350, 2005-Ohio-2643, ¶ 34. *See also Bates v. Bates*, 10th Dist. No. 04AP-137, 2005-Ohio-3374, ¶ 21. "The starting point for determining the proper amount of child support to be paid is parental income, defined as gross income for those employed to full capacity or gross income plus potential income for those not employed to full capacity." *Wolf-Sabatino v. Sabatino*, 10th Dist. No. 12AP-1042, 2014-Ohio-1252, ¶ 7, citing *Morrow v. Becker*, 138 Ohio St.3d 11, 2013-Ohio-4542, ¶ 11.

{¶ 14} For purposes of child support, R.C. 3119.01(C)(7) defines "[g]ross income," in relevant part, as follows:

> "Gross income" means, except as excluded in division (C)(7) of this section, the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes * * * self-generated income.

{¶ 15} "Self-generated income" is defined in R.C. 3119.01(C)(13), in relevant part, as "gross receipts received by a parent from self-employment, * * * minus ordinary and necessary expenses incurred by the parent in generating the gross receipts." "Ordinary and necessary expenses incurred in generating gross receipts" is defined in R.C. 3119.01(C)(9)(a) as "actual cash items expended by the parent or the parent's business * * * as shown on the books of a business entity."

{¶ 16} Appellant testified to a yearly gross income of $29,149.43 from self-employment as a taxi driver. According to appellant's records, $5,132.72 of his yearly gross income was derived from cash transactions and $24,016.71 from credit card transactions as reflected in a statement he received from a credit card servicing company known as "Square." (Tr. at 42.)

{¶ 17} The magistrate concluded appellant's gross receipts were "at least $29,148.88." (Feb. 15, 2017 Mag.'s Decision at 1.)  Following an independent review of the evidence, the trial court adopted the magistrate's finding.  Appellant claims that the magistrate's finding is contrary to the only evidence in the record on the issue, appellant's testimony and exhibits.  Our review of the transcript, however, shows that when the magistrate queried appellant regarding his self-generated income, the following exchange took place:

> MAGISTRATE RUTTAN: And can you estimate for me approximately what percentage of your payments are made in credit card payments versus cash?
>
> WITNESS: Oh, almost to 98, 99, almost.  Mostly – mostly its credit card, so I'm afraid to give the wrong percentage.
>
> MAGISTRATE RUTTAN: So if I understand correctly what your earlier testimony was, and again, I haven't seen your calculations.  In 2016, you made $29,000.00 correct?
>
> WITNESS: Yeah.  Yes.
>
> MAGISTRATE RUTTAN: And one of your exhibits, you estimate how much you received in cash; is that correct?
>
> WITNESS: Yes.
>
> MAGISTRATE RUTTAN:  And that figure was $5,000.00, -
>
> WITNESS: Yes.
>
> MAGISTRATE RUTTAN: - correct?
>
> WITNESS: Yes.
>
> MAGISTRATE RUTTAN:  So you made almost a total of $30,000.00 and by your own estimation $5,000.00 of that was cash?
>
> WITNESS: Yes.
>
> MAGISTRATE RUTTAN:  Which by my very rough calculation is more than the one or two percent that would be cash, correct?

WITNESS: That – yes.

MAGISTRATE RUTTAN: Okay. So would you like – since you've been a cab driver for 11 years –

WITNESS: Yes.

MAGISTRATE RUTTAN: - would you like to make another stab at what percentage of your income is actually cash versus credit card?

WITNESS: I – I don't understand. What is that again?

MAGISTRATE RUTTAN: What percentage of the payments that you received for driving the cab are cash versus credit card?

WITNESS: If you are asking the accurate percent, I will not be able to do it.

(Tr. at 72-74.)

{¶ 18} It is evident from the transcript and from the magistrate's decision that the magistrate did not find appellant's testimony regarding his yearly gross income to be credible, particularly with regard to income derived from cash receipts. The magistrate's decision notes appellant "presented no tax returns" to support his testimony. (Mag.'s Decision at 2.)

{¶ 19} As the trier of fact, the magistrate was free to believe or disbelieve any witness. *In re Moore*, 10th Dist. No. 06AP-970, 2007-Ohio-3995; *H.R. v. L.R.*, 181 Ohio App.3d 837, 2009-Ohio-1665 (10th Dist.). The trier of fact is also free to believe all, part, or none of the testimony of each witness. *Moore*; *H.R. See also Sims v. Dibler*, 172 Ohio App.3d 486, 2007-Ohio-3035, ¶ 44 (7th Dist.). Based on the evidence in the record, the magistrate concluded appellant's yearly gross receipts were greater than he had related in his testimony.

{¶ 20} With regard to appellant's business expenses, the only evidence submitted by appellant to support his testimony regarding business expenses was a two-page exhibit listing the type of expense incurred in one column and the corresponding monthly dollar amount in the next column. According to appellant's exhibit, he incurred monthly expenses of $1,223.79 in order to generate monthly gross income of $2,429.12, leaving

$1,205.53 as his monthly net income and $14,463.95 as his yearly net income. The magistrate noted appellant provided no receipts for any of the expenses listed in the exhibit with the single exception of the $664.17 credit card fees memorialized in the statement from Square.

{¶ 21} The trial court, in overruling appellant's objection to the amount of child support ordered by the magistrate, expressed skepticism regarding the gross receipts and expense figures related by appellant. The trial court stated:

> Despite [appellant's] claim to have receipts to support his summary of business expenses, [appellant] failed to bring same to the hearing. While other "suitable" documentation besides receipts could have been used to verify [appellant's] business expenses, the court finds, as the Magistrate did, [appellant] failed to provide any competent and credible evidence to support his ordinary and necessary business expenses. At the initial administrative hearing, the Administrative hearing Officer also found [appellant's] testimony regarding his income and expenses to be "not credible as it was confusing and conflicting at best."

(Sept. 29, 2017 Trial Ct. Decision at 4.)

{¶ 22} The trial court also noted if appellant's testimony regarding his yearly gross receipts and business expenses were to be believed, appellant's net income would be "below Ohio's 2016 minimum wage of $16,848 annually." (Trial Ct. Decision at 4.) The trial court further found as follows:

> Many employers in Central Ohio (Target/Walmart) pay $10-12 per hour starting wage and [appellant] could earn more working something other than driving a taxi. The court is suspect of [appellant's] claim of only receiving $5,000 annually in cash, which equates to roughly $100 per week, and since he said he works six days [a week] that equates to only an average of $16.66 per day in rides paid for in cash.

(Trial Ct. Decision at 4-5.)

{¶ 23} Based on the foregoing, we disagree with appellant's argument that the magistrate and the trial court simply ignored credible evidence regarding legitimate business expenses incurred by appellant. Rather, the magistrate disbelieved appellant's testimony regarding gross receipts, particularly those derived from cash, and found that appellant's evidence of business expenses was unsupported either by receipts or other

corroborating evidence. In overruling appellant's objections, the trial court, conducting a de novo review of the evidence, determined the evidence in the record supported the magistrate's findings as to appellant's net yearly income for purposes of calculating appellant's child support obligation.

{¶ 24} "The determination of gross income [for purposes of calculating child support] is a factual finding which is reviewed using the 'some competent, credible evidence' standard." *Serra v. Serra*, 10th Dist. No. 15AP-528, 2016-Ohio-950, ¶ 10, citing *Dannaher v. Newbold*, 10th Dist. No. 05AP-172, 2007-Ohio-2936, ¶ 14. In reviewing the trial court's factual findings regarding the determination of child support, we are mindful that this court is not permitted to substitute its judgment for that of the trial court in ruling on witness credibility. *Banchefsky v. Banchefsky*, 10th Dist. No. 09AP-1011, 2010-Ohio-4267, citing *Ruben v. Ruben*, 10th Dist. No. 82AP-914 (July 26, 1983). In this instance, our review of the evidence in the record reveals some competent, credible evidence to support the trial court's determination of appellant's gross income for purposes of calculating child support. Accordingly, we hold the trial court did not abuse its discretion in adopting the magistrate's findings as to appellant's gross income for 2016.

## B. Child Support Credit

{¶ 25} Appellant next contends the trial court failed to give appellant credit for court-ordered payments he made for the support of his children in Ethiopia. We disagree.

{¶ 26} R.C. 3119.05(B) provides "[t]he amount of any pre-existing child support obligation of a parent under a child support order * * * *actually paid* shall be deducted from the gross income of that parent to the extent that payment under the child support order * * * is verified by supporting documentation." (Emphasis added.) Appellant testified he paid court-ordered child support for his three minor children in Ethiopia. The magistrate determined appellant failed to support this claim with verified documentation. The trial court agreed with the magistrate. We agree with the trial court.

{¶ 27} In support of his claim that he actually paid court-ordered child support for his children in Ethiopia, appellant submitted a certified copy of an entry issued by a court in Ethiopia dissolving appellant's marriage to one Zemmzem Mohammed and ordering appellant to pay 1,000 Ethiopian Birr for each of his three minor children from the marriage. (Tr., Pl.'s Ex. C.) The magistrate found appellant failed to prove he actually

paid the child support ordered by the court in Ethiopia. The trial court, in overruling appellant's objections, found as follows:

> [Appellant] has three children from a prior relationship residing in Ethiopia for whom he claims to pay court ordered child support. *See* Plaintiff's Exhibit C. To effectuate his payments, [appellant] explained that he "send[s] cash with people, my people going to Ethiopia" who then give it to his Ethiopian divorce lawyer (i.e. his father) who ensures the mother of his children receive it. *See* Tr. at 49. He claimed to have sent $1,800 for his children in Ethiopia in 2016. When questioned more about with whom he sent the money to bring to his father in Ethiopia, [appellant] could only recall his "friend's" first name, Angow. *See* Tr. at 62. The court finds that [appellant] again failed to provide credible evidence that he was actually making payments on his Ethiopian child support obligation. In addition to failing to provide documentation of proof of payment, his testimony of sending money with "friends" was not credible. Nor was a certified court document provided that proved what the exchange rate of 3,000 Ethiopian birr would be or what amount was paid in US dollars.

(Trial Ct. Decision at 6.)

{¶ 28} Our review of the record confirms the trial court's findings with regard to appellant's alleged payments to Ethiopia. Even if this court were to accept the fact that appellant had a legal obligation to pay some amount of child support for his children in Ethiopia, the record does not contain any verifying documentation to support a finding that appellant actually paid any such child support. Moreover, both the magistrate and the trial court found appellant's story about his manner of payment lacking in credibility. On this record, we find the trial court did not abuse its discretion when it overruled appellant's objections to the magistrate's determination that appellant failed to prove his entitlement to a child support credit.

{¶ 29} For the foregoing reasons, we find the trial court did not err when it overruled appellant's objections to the magistrate's determination of his child support obligation.

### C. Parenting Time

{¶ 30} Appellant next contends the trial court erred when it overruled his objection to the magistrate's determination of his parenting time. Appellant claims that R.C.

3119.08 obligated the trial court to award him parenting time in connection with the adjustment to child support. We disagree.

{¶ 31} R.C. 3119.08 provides "[w]henever a court issues a child support order, it shall include in the order specific provisions for regular, holiday, vacation, parenting time, and special visitation in accordance with section 3109.051, 3109.11, or 3109.12 of the Revised Code or in accordance with any other applicable section of the Revised Code." The trial court found "there is no formal request made by [appellant], either in his objection to the Administrative Recommendation or objection to the Magistrate's Decision, or by separate motion, for parenting time with the children." (Trial Ct. Decision at 11.)

{¶ 32} The record shows appellant never filed a complaint seeking a determination of parenting time pursuant to R.C. 3109.12.[1] Consequently, a parenting time schedule has never been ordered in this case. Appellant first raised the issue of his parenting time in his objections to the magistrate's decision in this case. He did not raise the issue at any time during the administrative proceedings nor did he raise the issue at the hearing before the magistrate where evidence on the issue could have been submitted.

{¶ 33} Even if we were to hold that the parenting time provisions of R.C. 3109.08 are self-executing, the trial court noted "there was insufficient evidence provided for the court to analyze the necessary factors set forth in R.C. 3109.051(D)."[2] (Trial Ct. Decision at 11-12.) In our view, the limited evidence relevant to parenting time that was introduced at the hearing before the magistrate demonstrates appellant began exercising visitation with the children only two or three months before the hearing. Appellant testified that he picks the children up at school on Fridays, and they stay with him until 8:00 p.m. Appellant acknowledged that he previously exercised no visitation with his three children

---

[1] R.C. 3109.12(A) pertaining to "[p]arenting time, companionship or visitation rights where mother is unmarried" provides in relevant part: "If a child is born to an unmarried woman and if the father of the child has acknowledged the child and that acknowledgment has become final pursuant to section 2151.232, 3111.25, or 3111.821 of the Revised Code or has been determined in an action under Chapter 3111. of the Revised Code to be the father of the child, the father may file a complaint requesting that the court of appropriate jurisdiction of the county in which the child resides grant him reasonable parenting time rights with the child and the parents of the father and any relative of the father may file a complaint requesting that the court grant them reasonable companionship or visitation rights with the child."

[2] R.C. 3109.051(D) set forth a non-exhaustive list of 16 factors the court must consider in "establishing a specific parenting time."

for a period of three and one-half years, but he blamed appellee for refusing to permit him visitation.

{¶ 34} Appellee testified that appellant does not exercise his parenting rights and that he has spent little time with his three children. She testified appellant does not take the children to school, he does not buy them clothes, or spend money on them outside of the court-ordered support.

{¶ 35} In support of his objections, appellant did not seek leave from the trial court to submit additional evidence relevant to the factors affecting parenting time. This court has stated that " 'parental rights determinations are difficult to make and appellate courts accord wide latitude to the trial court's consideration of evidence in these cases.' " *Hamilton v. Hamilton*, 10th Dist. No. 14AP-1061, 2016-Ohio-5900, ¶ 8, quoting *Faulks v. Flynn*, 4th Dist. No. 13CA568, 2014-Ohio-1610, ¶ 20. Under the circumstances of this case and on this record, we cannot say the trial court abused its discretion when it overruled appellant's objections to the magistrate's decision related to parenting time.

## D. Tax Deduction

{¶ 36} Appellant's final challenge to the trial court's decision pertains to the allocation of the federal income tax dependency exemption to appellee for each of the three children. Appellant testified that he had previously claimed the exemption and that he had received a substantial tax refund in 2016.

{¶ 37} R.C. 3119.82 provides for the designation of the federal income tax deduction as follows:

> In cases in which the parties do not agree which parent may claim the children as dependents, the court shall consider, in making its determination, any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children.

{¶ 38} An appellate court reviews a trial court's decision allocating tax exemptions for dependents under an abuse of discretion standard. *Morrow* at ¶ 9; *Serra* at ¶ 8. "An abuse of discretion occurs where a trial court's decision is unreasonable, arbitrary, or unconscionable." *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 39} "The Internal Revenue Code creates a presumption in favor of the custodial parent in the allocation of the federal income tax dependency exemption." *Burns v. Burns*, 12th Dist. No. CA2011-05-050, 2012-Ohio-2850, ¶ 27, citing *Pahls v. Pahls*, 12th Dist. No. CA2009-01-005, 2009-Ohio-6923, ¶ 22. When the parents disagree as to which of them should claim a child as a dependent, the burden is on the non-residential parent to produce competent and credible evidence to show that allocating the dependency exemption to the non-residential parent would be in the best interests of the child. *Serra* at ¶ 37. *See also Meassick v. Meassick*, 171 Ohio App.3d 492, 2006-Ohio-6245, ¶ 15 (7th Dist.).

{¶ 40} *Foster v. Foster*, 6th Dist. No. S-03-037, 2004-Ohio-3905, is an example of a case where the court of appeals upheld a trial court's award of the dependency exemption to the non-custodial parent. In that case, the Sixth District Court of Appeals noted that the evidence showed the exemption allocation was in the best interest of the child since the non-custodial parent would have more money to do activities with his daughter during her visits, while awarding the custodial parent would cause no difference in the child's standard of living. *Id.* at ¶ 24.

{¶ 41} Here, unlike *Foster*, appellant failed to produce evidence to support a finding that it was in the best interests of the children for him to retain the right to claim the children as dependents. As noted above, the evidence shows appellant has spent very little time with his children over the years, and we have affirmed the trial court's judgment regarding appellant's future parenting time. Though appellant testified he received a substantial income tax refund for the 2016 tax year, he has not produced evidence to establish the portion of that refund attributable to the exemptions. As the magistrate and the trial court noted, appellant failed to provide his tax documents at the hearing. Nor has appellant demonstrated that appellee would not also benefit from exemption, as the record shows that appellee is actively seeking full-time employment. *See Serra* at ¶ 38 (fact that a non-residential parent would have received a greater tax benefit than the residential parent does not require a trial court to allocate the dependency exemption to the non-residential parent).

{¶ 42} "[T]he overriding concern in calculating child support is the best interest of the child for whom support is being awarded." *Bates* at ¶ 21. Based on the evidence in

the record, we cannot say the trial court abused its discretion in this case by affirming the magistrate's allocation of the tax exemption to appellee as appellant failed to satisfy his burden of proving that the best interests of the children required appellant to retain the exemptions.

{¶ 43} Having disposed of appellant's arguments in support of his sole assignment of error, we hold the trial court did not err when it overruled appellant's objections to the magistrate's decision and adopted the magistrate's decision as its own. Accordingly, appellant's assignment of error is overruled.

## V. CONCLUSION

{¶ 44} Having overruled appellant's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

*Judgment affirmed.*

KLATT and LUPER SCHUSTER, JJ., concur.

_____