[Cite as *Serra v. Serra*, 2016-Ohio-950.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Cynthia Serra, | : | |
| Plaintiff-Appellee, | : | No. 15AP-528 |
| | | (C.P.C. No. 12DR-0242) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Jose Serra, | : | |
| Defendant-Appellant. | : | |

## D E C I S I O N

### Rendered on March 10, 2016

**On brief:** *Gregg R. Lewis* and *Sonya S. Marshall*, for appellee. **Argued:** *Gregg R. Lewis*

**On brief:** *Grossman Law Offices*, *Andrew S. Grossman*, *John H. Cousins IV*, and *Nadia Khan-Ajam*, for appellant. **Argued:** *Andrew S. Grossman*

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Jose Serra, appeals from a decree of divorce ordering Jose to pay child support, awarding attorney fees to plaintiff-appellee, Cynthia Serra, and allocating the federal income tax dependency exemptions for the parties' three minor children to Cynthia. For the reasons that follow, we affirm.

## I. Facts and Procedural History

{¶ 2} Jose is self-employed and owns Five Star Construction Services, LLC. Cynthia is a technology project manager for both Crystal Vision, LLC, and JPMorgan Chase, and she owns a cleaning company, Five Star Professional Cleaning Services, LLC. Jose and Cynthia were married on December 19, 2000 and have three minor children.

{¶ 3} In January 2012, Cynthia filed a complaint for divorce, alleging incompatibility. The next month, Jose filed an answer and counterclaim, also alleging incompatibility. The trial court issued a temporary order requiring, inter alia, Jose to pay $1,318.87 per month, plus processing fees, in child support. The trial court appointed a guardian ad litem and required the parties to equally assume the cost of the guardian. The parties resolved the division of their property on their own, and they entered an agreement concerning the allocation of parental rights and responsibilities.

{¶ 4} The matter proceeded to trial in December 2014 on the contested issues of child and spousal support. The evidence at trial centered on Jose's income. Jose and Cynthia hired financial experts, and both of these experts testified at trial regarding their respective analysis of Jose's income. Cynthia's financial expert, Bryan Daulton, testified that Jose's income for 2013 was $513,949.72. Daulton determined Jose's income in an indirect manner by primarily analyzing Jose's documented expenses. In his income calculation, Daulton also included the purchase price of a Ferrari, which was not documented as one of Jose's expenses. Jose's financial expert, Alan Lewis, testified that Jose's income for 2013 was $191,780.72. Lewis started his income determination with Daulton's "catalog of personal expenses," and adjusted that amount by excluding the Ferrari expense and including additional business expense deductions. (Income Summary - Cynthia Serra, 3.) For the year 2013, Jose reported on his IRS Form 1040 that his gross income was $40,410.

{¶ 5} In April 2015, the trial court filed the decree of divorce, which granted the parties a mutual divorce and resolved the pending issues. As pertinent here, the trial court determined Jose's income for the purpose of its child support analysis to be approximately $306,077.47, based on Lewis' $191,780.72 figure, plus $68,496.75 for the Ferrari, $4,000.00 for taxes paid for the Ferrari, $10,000.00 for the estimated but unsubstantiated business vehicle expenses, and at least $31,800.00 for the Ford F-350 truck purchase price. The trial court ordered Jose to pay $4,716.80 per month, plus a processing charge, as child support for the parties' three children. The trial court declined to award any spousal support. The trial court also awarded Cynthia $20,000.00 in attorney fees.

{¶ 6} Jose timely appeals.

## II. Assignments of Error

{¶ 7}   Jose assigns the following errors for our review:

[1.] The trial court erred, abused its discretion, and ruled against the manifest weight of the evidence by calculating appellant's gross income to include, inter alia, the purchase price of a Ferrari and a pickup truck for purposes of determining child support.

[2.] The trial court erred and abused its discretion by extrapolating appellant's income [sic] for purposes of child support and by failing to conduct the case-by-case analysis required by R.C. 3119.04.

[3.] The trial court erred and abused its discretion in awarding attorney fees.

[4.] The trial court erred and abused its discretion by granting appellee the dependency tax exemption for their three minor children.

## III. Discussion

### A. First and Second Assignments of Error – Child Support

{¶ 8}   Jose's first and second assignments of error challenge the trial court's award of child support.   Child support orders are reviewed under an abuse of discretion standard.  *Morrow v. Becker*, 138 Ohio St.3d 11, 2013-Ohio-4542, ¶ 9.   An abuse of discretion occurs where a trial court's decision is unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 9}   "The underlying purpose of Ohio's child support legislation * * * is to meet the current needs of the minor child."  *Harbour v. Ridgeway*, 10th Dist. No. 04AP-350, 2005-Ohio-2643, ¶ 34; *see Bates v. Bates*, 10th Dist. No. 04AP-137, 2005-Ohio-3374, ¶ 21 ("We are mindful that the overriding concern in calculating child support is the best interest of the child for whom support is being awarded.").   The starting point for determining the proper amount of child support to be paid is parental income, defined as gross income for those employed to full capacity or gross income plus potential income for those not employed to full capacity.  *Morrow* at ¶ 11; R.C. 3119.01(C)(5).

{¶ 10} For purposes of child support, a parent's gross income is defined as "the total of all earned and unearned income from all sources during a calendar year, whether

or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses * * * royalties; tips; rents; dividends; * * * interest; * * * and all other sources of income."  R.C. 3119.01(C)(7).  "Gross income" includes "self-generated income."  R.C. 3119.01(C)(7).  "Self-generated income" means "gross receipts received by a parent from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, and rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts."  R.C. 3119.01(C)(13).  "Ordinary and necessary expenses incurred in generating gross receipts" means "actual cash items expended by the parent or the parent's business and includes depreciation expenses of business equipment as shown on the books of a business entity."  R.C. 3119.01(C)(9)(a).  The determination of gross income is a factual finding which is reviewed using the "some competent, credible evidence" standard.  *Dannaher v. Newbold*, 10th Dist. No. 05AP-172, 2007-Ohio-2936, ¶ 14.

### 1.  First Assignment of Error – the Ferrari, Ford F-350, and $10,000 in Vehicle Expenses

{¶ 11} In his first assignment of error, Jose argues the trial court erred by including the purchase prices of a Ferrari and a Ford F-350, as well as $10,000 in vehicle expenses, in his gross income for the purpose of determining his child support obligation.

### a.  The Ferrari

{¶ 12} The trial court concluded that the Ferrari at issue was purchased for $68,496.75 (excluding taxes) with money Jose provided and that this vehicle was solely used by him.  Based on this conclusion, the trial court attributed the purchase price of the Ferrari to Jose for the purpose of determining his income.  Jose argues there is no competent, credible evidence in the record indicating that he purchased a Ferrari, and, thus, the trial court abused its discretion in including the purchase price of the Ferrari in his income.  We disagree.

{¶ 13} We find the trial court reasonably concluded that Jose purchased the Ferrari for $68,496.75, even though the vehicle was titled in someone else's name. According to Jose, the Ferrari was purchased by Eberth Valdez, a self-employed painter who frequently works for Jose on construction projects.  It is undisputed that Valdez was

identified as the purchaser on the purchase agreement for the Ferrari.[1] However, the source of funds for the Ferrari was disputed. Contrary to Jose's argument, the record contains competent, credible evidence that Jose, not Valdez, paid for the Ferrari.

{¶ 14} At trial, Valdez described his difficult financial circumstances due to his low income and his wife's student debt. He even acknowledged he does not have the means to afford a Ferrari. Valdez lives with his wife and three children in a government subsidized apartment with a rent payment of $650 per month. Despite his financial circumstances, Valdez testified that he purchased the Ferrari as an "investment" from HK Motors for $62,000 in cash in May 2013, and then sold it a few months later to "a guy named Speed * * * in Massachusetts" for $72,000. (Tr. Vol. II, 297, 306.) Valdez testified that he was able to purchase the Ferrari because he had saved some money from painting and had sold property in Venezuela. Valdez had no records of the money that came from Venezuela. The trial court reasonably chose not to believe this testimony.

{¶ 15} Instead, based on all the evidence presented, including Cynthia's testimony, the trial court believed Jose had purchased the Ferrari. Cynthia testified that in June 2013, Jose told her had he bought a Ferrari after he learned she recently purchased a Honda Odyssey. Jose does not deny telling Cynthia he had purchased a Ferrari. Instead, he challenges her testimony as "vague" and asserts that because she testified she did not believe him at the time, his statement was essentially false bravado. (Jose's Brief, 10.) The fact that Cynthia did not believe Jose's statement that he bought a Ferrari does not preclude the trial court from now concluding that Jose did purchase the Ferrari at issue. Other evidence also supported the trial court's finding, including evidence that Jose paid the tax on the Ferrari purchase, paid for the repairs to the Ferrari, and drove the Ferrari. Moreover, Jose generally had the means to purchase an expensive vehicle like a Ferrari, unlike the purported purchaser who was living in income-based housing. Based on this

---

[1] In a footnote in his appellate brief, Jose argues the purchase price of the Ferrari was $63,900.00, excluding taxes, and that this amount is reflected on the purchase agreement. Although the purchase agreement for the Ferrari was marked as an exhibit at trial, it was not admitted into evidence and thus is not part of the record before this court. Moreover, Daulton testified that he attributed $68,496.75 as the purchase price of the Ferrari based on his review of the purchase agreement. Considering Daulton's testimony and the absence of the purchase agreement in the record, we cannot conclude that the trial court's finding that $68,496.75 as the purchase price of the Ferrari was against the manifest weight of the evidence.

evidence, we conclude the record contains competent, credible evidence supporting the trial court's finding that Valdez purchased the Ferrari using Jose's funds and for Jose's benefit.

{¶ 16} In his appellate brief, Jose challenges the inclusion of the Ferrari expense in his income on the sole basis that he allegedly did not purchase the vehicle. But, as demonstrated above, competent, credible evidence supported the trial court's conclusion that Jose purchased the Ferrari. For the first time, at oral argument, Jose argued that, even if he purchased the Ferrari, it was still error for the trial court to include the purchase price of the Ferrari in his income. An "issue raised during oral argument for the first time and not assigned as error in the appellate brief is, generally, untimely." *State v. Chambers*, 10th Dist. No. 99AP-1308 (July 13, 2000). "Further, under App.R. 12(A), an appellate court is not required to consider issues not argued in the briefs." *Id.* We will not address Jose's alternate argument presented for the first time on appeal at oral argument.

### b. The Ford F-350 and $10,000 in Vehicle Expenses

{¶ 17} Jose argues the trial court erred in including, in his income, the purchase price of a Ford F-350 truck and $10,000 of what the court considered "unsubstantiated 'business' vehicle expenses." Jose contends the trial court erroneously added these expenses to his income using logic contrary to his expert's methodology in determining his income. We disagree.

{¶ 18} As to the Ford F-350 and $10,000.00 in vehicle expenses, on appeal, Jose does not challenge the trial court's findings that these were not business expenses that should be excluded from his income. Instead, he argues the trial court's calculation was contrary to his expert's methodology. Because Jose's income was not readily apparent, both experts calculated income by totaling Jose's expenditures and deducting business expenses. Jose's expert concluded his income was $191,780.72, which did not include the cost of the Ford F-350 or the additional vehicle expenses because the expert found these to be business expenses. Based on its review of the evidence, the trial court disagreed that the $31,800.00 Jose spent on the Ford F-350 truck and the additional $10,000.00 in vehicle expenses were business expenses. The trial court, therefore, added Ford F-350's cost and the additional vehicle expenses to Jose's expert's income determination. Because

the trial court's reasoning was consistent with the methodology applied by both parties' experts, Jose's challenge to that reasoning is unpersuasive.

{¶ 19} For these reasons, Jose's first assignment of error is overruled.

**2. Second Assignment of Error – R.C. 3119.04**

{¶ 20} In his second assignment of error, Jose argues the trial court abused its discretion by failing to conduct the case-by-case analysis required under R.C. 3119.04 for the purpose of determining his child support obligation. This assignment of error lacks merit.

{¶ 21} It is undisputed that the parties' combined yearly gross income exceeds $150,000. Under this circumstance, the court must calculate the child support obligation on a case-by-case basis and must consider the needs and the standard of living of the children and of the parents. *Guertin v. Guertin*, 10th Dist. No. 06AP-1101, 2007-Ohio-2008, ¶ 4, citing R.C. 3119.04(B). R.C. 3119.04(B) provides that "[i]f the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, with respect to a court child support order, * * * shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents." The statute further provides that "[t]he court * * * shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court * * * determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount." R.C. 3119.04(B). The statute mandates that should the court make "such a determination, it shall enter in the journal the figure, determination, and findings." R.C. 3119.04(B).

{¶ 22} In view of R.C. 3119.04(B), in cases where the parties' combined income exceeds $150,000, the court is bound by three requirements. *Chawla v. Chawla*, 10th Dist. No. 13AP-399, 2014-Ohio-1188, ¶ 14. The court must: (1) set the child support amount based on the qualitative needs and standard of living of the children and parents, (2) ensure that the amount set is not less than the $150,000-equivalent, unless

appropriate, and (3) if it decides less than the $150,000-equivalent is appropriate, then journalize the justification for that decision.  *Id.*

{¶ 23} Here, the magistrate awarded $1,318.00 in temporary child support, which the trial court increased to $4,716.80 in the final divorce decree. Jose argues that the trial court did not engage in the analysis required pursuant to R.C. 3119.04 in determining the amount of child support to award.  Jose asserts that the trial court failed to consider that he earned significantly less than Cynthia, that it did not consider the needs and lifestyle of the children and the parties, and that it improperly relied on its own personal belief regarding his construction business in Columbus.  According to Jose, this case is similar to *Wolf-Sabatino v. Sabatino*, 10th Dist. No. 12AP-1042, 2014-Ohio-1252.

{¶ 24} In *Wolf-Sabatino*, the trial court substantially increased the amount of child support ordered even though evidence demonstrated that the child enjoyed a comfortable lifestyle prior to the substantial increase.  *Id.* at ¶ 16-17.  In increasing the child support order, the trial court primarily relied on the child support calculation worksheet, without considering the needs and the standard of living of the child and the parties.  *Id.* at ¶ 17. This court concluded the trial court had abused its discretion because, "[u]nder the specific circumstances of [that] case, * * * the trial court failed to demonstrate that the child support order was based on a case-by-case analysis of the needs and the lifestyle of the child and the parties."  *Id.* at ¶ 15.

{¶ 25} Jose argues the case at bar is similar to *Wolf-Sabatino* because evidence demonstrated that the parties' children continued to live the lifestyle to which they were accustomed before  the trial court increased the child support from $1,318.00, as provided in the magistrate's temporary order, to $4,716.80 in the final divorce decree.  We disagree.  *Wolf-Sabatino* is distinguishable because the trial court here engaged in the analysis required under R.C. 3119.04.  The trial court determined the increase in the child support was warranted considering the facts of this case.  The trial court acknowledged that, as the primary caregiver of the children, Cynthia must pay for the vast majority of expenses related to the raising of the children, including paying for the children to attend expensive basketball camps and related athletic expenses, which total approximately $30,000.00 per year.  Also, the trial court noted that, since separating, Cynthia filed for bankruptcy protection under Chapter 13 of the U.S. Bankruptcy Code and has worked two

full-time jobs to keep up with her expenses and maintain the quality of life enjoyed prior to the parties' separation.  Cynthia testified that, in addition to being responsible for the three children and their many activities, she works at least 80 hours per week and up to 96 hours per week in connection with her two jobs.  Cynthia testified that she intends to reduce her workload, and the trial court found this testimony to be credible.  The trial court determined that Cynthia likely will quit one of her jobs, which would significantly reduce her income and her ability to maintain the current standard of living for herself and the children.

{¶ 26} Jose also argues the trial court improperly considered the likelihood of his continued financial success in the construction industry as part of its R.C. 3119.04 analysis.  As part of its justification of the increased child support award, the trial court observed that the amount of child support Jose "was paying in the past was far too inadequate for a man with Jose's intelligence, experience, business acumen and success." (Divorce Decree, 17.)  The trial court further observed that construction "is booming in Columbus, and the court is convinced Jose will continue to be as successful as he has been."  (Divorce Decree, 17.)  Jose contends that these observations are irrelevant in regard to analyzing the standard of living for the children or Cynthia for the purpose of R.C. 3119.04, and that they are based on the court's personal belief.

{¶ 27} Contrary to Jose's argument, the likelihood of his continued financial success was pertinent to assessing his standard of living in relation to an increase in child support.  Furthermore, although there was no testimony at trial directly addressing the status of the construction industry in Columbus, the evidence at trial demonstrated Jose's success in the construction business in Columbus, and no evidence suggested that this success would wane in the immediate future.  Thus, we are unpersuaded that the statements of the trial court regarding Jose's positive business attributes and the Columbus construction climate demonstrate an abuse of discretion by the trial court as to its award of child support.

{¶ 28} Because the trial court engaged in the analysis required under R.C. 3119.04, and because the trial court's factual findings related to that analysis are supported by competent, credible evidence, we conclude the trial court did not abuse its discretion in

ordering Jose to pay $4,716.80 per month in child support. Accordingly, we overrule Jose's second assignment of error.

### B. Third Assignment of Error – Attorney Fees

{¶ 29} Jose's third assignment of error alleges the trial court abused its discretion in awarding attorney fees. Jose argues the trial court's award of $20,000 in attorney fees was arbitrary, inequitable, and not supported by competent, credible evidence.

{¶ 30} Ohio adheres to the "American rule" in regard to the recovery of attorney fees: "a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation." *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, ¶ 7. An exception to this general rule is that attorney fees may be awarded to a prevailing party when a statute specifically authorizes it. *Id.* In an action for divorce, R.C. 3105.73(A) permits a trial court to award "all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." In determining whether an award under R.C. 3105.73(A) is equitable, "the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." Thus, a court decides "on a case-by-case basis whether an award of attorney fees would be equitable." *Scinto v. Scinto*, 10th Dist. No. 09AP-5, 2010-Ohio-1377, ¶ 22, citing *Ockunzzi v. Ockunzzi*, 8th Dist. No. 86785, 2006-Ohio-5741, ¶ 70. An award of attorney fees in a domestic relations action is within the sound discretion of the trial court and the appellate court will not reverse on appeal absent an abuse of discretion. *Settele v. Settele*, 10th Dist. No. 14AP-818, 2015-Ohio-3746, ¶ 51.

{¶ 31} Here, the trial court determined Cynthia's attorney fees to be approximately $60,000 for this litigation, and it ordered Jose to pay $20,000 of those fees. Regarding its attorney fees award, the trial court noted that Jose's conduct had "led to the litigation being drawn-out," emphasizing Jose's significant evasiveness in regard to his income. (Divorce Decree, 25.) Citing *Feldmiller v. Feldmiller*, 2d Dist. No. 24989, 2012-Ohio-4621, Jose argues the trial court arbitrarily ordered him to pay one-third of Cynthia's attorney fees without the record demonstrating a sufficient connection between the amount of fees awarded and Jose's misconduct. We disagree with Jose's contention that the attorney fees award was arbitrary.

{¶ 32} R.C. 3105.73(A) expressly permits a trial court to award "all or part" of a party's reasonable attorney fees. The statute does not require the award amount to be based on evidence directly linking one party's attorney fees with specific conduct of the other party if the court cites misconduct as an equitable basis for awarding fees. Instead, the statute authorizes a trial court to award attorney fees based on its consideration of any relevant factors it deems appropriate. Furthermore, the statute affords a trial court with discretion in weighing those factors to determine whether a particular attorney fees award is fair and equitable. In this matter, the reasonableness of Cynthia's total attorney fees was not in dispute. The trial court also found Jose's misconduct relating to his income complicated litigation and increased the costs Cynthia incurred. The trial court reasonably weighed this circumstance in favor of awarding attorney fees to Cynthia. That the trial court decided to award one-third of the attorney fees Cynthia incurred was not an abuse of discretion. *See Grein v. Grein*, 11th Dist. No. 2009-L-145, 2010-Ohio-2681, ¶ 39-45 (finding no abuse of discretion as to trial court's determination that an award of one-third of party's attorney fees was equitable).

{¶ 33} Because the trial court acted within its discretion when it awarded $20,000 in attorney fees to Cynthia, Jose's third assignment of error is overruled.

### C. Fourth Assignment of Error – Dependency Exemption

{¶ 34} In his fourth assignment of error, Jose asserts the trial court abused its discretion in allocating the federal income tax dependency exemptions for the parties' three minor children to Cynthia. Citing this court's decisions in *Poling v. Poling*, 10th Dist. No. 13AP-189, 2013-Ohio-5141 and *Lopez v. Lopez*, 10th Dist. No. 04AP-508, 2005-Ohio-1155, Jose argues the trial court arbitrarily allocated the exemptions to Cynthia without sufficiently considering the factors listed in R.C. 3119.82.

{¶ 35} Under federal tax law, a custodial parent generally may claim the dependency exemption. *See* 26 U.S.C. 152(c)(1); *Singer v. Dickinson*, 63 Ohio St.3d 408, 411 (1992). But a trial court has discretion to allocate the tax dependency exemption to a non-custodial parent and to require the custodial parent to take the necessary steps under federal law to implement this allocation. *See generally* R.C. 3119.82; *see also* 26 U.S.C. 152(e). An appellate court reviews a trial court's decision allocating tax exemptions for dependents under an abuse of discretion standard. *Goebel v. Goebel*, 10th Dist. No. 15AP-

61, 2015-Ohio-5547, ¶ 8; *Rainey v. Rainey*, 12th Dist. No. CA2010-10-083, 2011-Ohio-4343, ¶ 38.

{¶ 36} Pursuant to R.C. 3119.82, whenever a court issues a child support order, it must designate which parent may claim the child who is the subject of the support order as a dependent for federal income tax purposes. The court may permit the parent who is not the residential parent to claim the child as a dependent for federal income tax purposes only if the court determines that this furthers the best interest of the child and the payments for child support are substantially current as ordered by the court for the year in which the child will be claimed as a dependent. R.C. 3119.82. In making its allocation determination, the court must consider "any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children." R.C. 3119.82.

{¶ 37} Considering the framework for claiming the dependency exemption under federal law, there is a "presumption" in favor of the residential parent receiving the dependency exemption. *Burns v. Burns*, 12th Dist. No. CA2011-05-050, 2012-Ohio-2850, ¶ 27. Therefore, " 'the burden is on the nonresidential parent to produce competent and credible evidence to show that allocating the dependency exemption to the nonresidential parent would be in the best interests of the child.' " *Id.*, quoting *Meassick v. Meassick*, 171 Ohio App.3d 492, 2006-Ohio-6245, ¶ 15 (7th Dist.). Further, that a nonresidential parent would have received a greater tax benefit than the residential parent does not require a trial court to allocate the dependency exemption to the nonresidential parent. *Ornelas v. Ornelas*, 12th Dist. No. CA2011-08-094, 2012-Ohio-4106, ¶ 55.

{¶ 38} We are unpersuaded by Jose's reliance on this court's decisions in *Poling* and *Lopez* because those cases are distinguishable. In *Poling*, physical custody of the children was "essentially equal," and the trial court allocated the dependency exemptions for the children to one parent for even-numbered years and to the other parent for odd-numbered years. *Id.* at ¶ 36. Evidence was presented in that case indicating that one party's federal income tax rate would be higher than the other party's, suggesting maximum net tax savings would occur if the allocation was to the party with the higher

tax rate.  This court concluded that, given that evidence in the record, "it was incumbent upon the trial court to set forth the basis for its allocation and its failure to do so is an abuse of discretion."  *Id.* at ¶ 37.  Similarly, in *Lopez*, this court determined that the trial court abused its discretion when it "failed to include any reasoning process to support its decision to award the federal dependent child exemption to [the nonresidential parent]."  *Id.* at ¶ 53.  Thus, in both *Lopez* and *Poling*, the trial court provided no explanation for its allocation decision, even though the evidence suggested a contrary allocation.  *Lopez* at ¶ 53; *Poling* at ¶ 37.

{¶ 39} Here, the trial court considered the phase out of the exemption for high income earners in its allocation determination.  Title 26 U.S.C. 151(d)(3) sets forth a phase out of the dependency exemption amount as income increases above certain thresholds.  The trial court decided to allocate all three dependency exemptions to Cynthia, the residential parent, reasoning as follows:  "Both parties are at income levels that may preclude them from claiming the children, but Cynthia may need or want to give up one of her jobs, at which point the exemptions may be of benefit to her.  Certainly, if Jose continues to claim his income is $40,000.00, the exemptions would be of benefit to him.  But he does not earn $40,000.00."  (Divorce Decree, 21.)  Thus, unlike *Poling* or *Lopez*, the trial court here provided an explanation for its dependency exemption allocation.  And, based on the trial court's income findings, the trial court's reasoning is consistent with the phase out rules relating to a single taxpayer claiming a dependency exemption.  Therefore, Jose's argument that the trial court arbitrarily allocated the dependency exemptions is without merit.

{¶ 40} Because the trial court did not abuse its discretion in allocating the dependency exemptions to Cynthia, we overrule Jose's fourth assignment of error.

## IV.  Disposition

{¶ 41} Having overruled all four of Jose's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgment affirmed.*

DORRIAN, P.J., concurs.
HORTON, J., concurs in part and dissents in part.

HORTON, J., concurring in part and dissenting in part.

{¶ 42} While I concur with the majority's opinion with respect to assignments of error two, three, and four, I respectfully dissent with the majority's conclusion that the record contains competent, credible evidence that Jose, not Valdez, purchased the Ferrari. As a result, it was an error for the trial court to include the cost of the Ferrari towards Jose's income, although the majority states that Jose told Cynthia that he purchased the Ferrari. The trial court clearly articulates that Cynthia's assertion that Jose purchased the Ferrari is "a claim Jose denies." (Divorce Decree, 6.) Valdez testified at trial that he purchased the Ferrari for an investment. While the trial court is fully within its bounds to disbelieve the witness, it cannot ignore clear legal evidence such as a title that proved Valdez owned the vehicle. The trial court seems to believe that just because one cannot afford such an expensive vehicle and keeps poor financial records that this somehow means there was insufficient evidence to establish Valdez purchased the Ferrari. The trial court's conclusions were unreasonable, arbitrary and therefore an abuse of discretion. Accordingly, I would sustain appellant's first assignment of error.

---