# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 106269

## JOHN C. GUE

PLAINTIFF-APPELLANT

vs.

## CHRISTINE M. GIRARDI

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-13-346345

**BEFORE:** E.A. Gallagher, A.J., McCormack, J., and Boyle, J.

**RELEASED AND JOURNALIZED:** September 20, 2018

[Cite as *Gue v. Girardi*, 2018-Ohio-3788.]

**APPELLANT**

John C. Gue, pro se
1380 112th Street, Apt. 204B
Cleveland, Ohio 44102


**APPELLEE**

Christine M. Girardi, pro se
25157 Carlton Park, #317
North Olmsted, Ohio 44070

EILEEN A. GALLAGHER, A.J.:

{¶1} Plaintiff-appellant-father John Gue ("father"), pro se, appeals from the trial court's order modifying the child support obligation of defendant-appellee-mother Christine Girardi ("mother"), pro se. For the reasons that follow, we affirm the trial court's decision.

**Factual and Procedural Background**

{¶2} Father and mother divorced in June 2014. At the time of their divorce, they had one adult child and three minor children — T.G. (age 17), N.G. (age 14) and H.G. (age 12). Under the shared parenting plan, which was adopted by the trial court, T.G. was to reside primarily with mother, N.G. was to reside primarily with father and H.G. was to reside with both parents, alternating weeks between their homes. The parties agreed that the parent not in possession of H.G. would pick her up at the end of the other parent's parenting time unless otherwise agreed.

{¶3} Pursuant to the agreed child support order incorporated in the divorce decree, mother was to provide health insurance for the children and was to pay $200.01 per month ($66.67 per month per child)[1] in child support for the three minor children. Mother's child support obligation was deviated downward from the amount computed under the child support worksheet based on the amount of time each parent spent with the

---

[1] The child support figures referenced herein do not include the 2 percent processing fee. They also reflect the amounts to be paid when private health insurance is provided, since mother has provided private health insurance for the children through her employer at all times relevant to this appeal.

children and as "an offset on the house."[2]   The parties agreed that all school expenses and all noncovered medical expenses would be paid 60 percent by mother and 40 percent by father.

**{¶4}** Effective May 31, 2015, T.G. became emancipated, and mother's monthly child support obligation was reduced to $133.34 for the parties' two remaining minor children.

**{¶5}** On May 17, 2016, father filed a motion to modify child support, seeking an increase in mother's child support obligation to $200 per month ($100 per month per child) over the standard child support obligation calculated under the child support guidelines. Father asserted that a change in circumstances had occurred and that an increase in mother's child support obligation was warranted because (1) mother had stopped spending time with the children and (2) the amount of child support awarded as part of the divorce decree "was neither fair nor equitable in retrospect." Father contended that he "bore the brunt of the cost" of providing for the children and the fact that he needed to reside in North Olmsted so that the children could continue to attend school in the district increased his financial burden. Father further contended that, at the time of the original support order, mother had represented that she would be unable to

---

[2] Under the parties' separation agreement, father agreed to quitclaim his interest in the marital residence to mother. Mother agreed to seek a modification of the mortgage, assumed responsibility for all of the utilities and maintenance expenses of the marital residence (which was then in foreclosure) and accepted responsibility for any profit or deficiency upon foreclosure or modification of the mortgage.

support the children at a level consistent with the child support guidelines "due to her health and intent to retire" but that this "has [not] proven to be true." Mother opposed the motion.

{¶6} In March 2017, mother filed a motion to show cause why father should not be held in contempt for (1) claiming H.G. as a dependent on his 2016 tax return, (2) failing to provide one-half of the transportation for H.G.'s visitation with mother and (3) failing to reimburse mother for certain expenses in accordance with the parties' shared parenting plan.

{¶7} In April 2017, the magistrate held a hearing on father's motion to modify child support. Father and mother appeared pro se at the hearing.[3] Each parent testified in narrative form. Father cross-examined mother, and the magistrate asked additional questions of each party. Mother declined to cross-examine father.

{¶8} Father testified that he was "currently unemployed," having lost his job as a machine operator at Superior Roll Forming Co. Inc. ("Superior Roll Forming") in March 2017 after he showed up late for work. Father testified that he had worked there for two-and-a-half years prior to his termination. Father testified that he had "63 resumes out" and hoped to find a new position within the next two weeks. He testified that his

---

[3] Mother and father were both originally represented by counsel. Mother discharged her counsel in February 2017. Father discharged his counsel a month later. Each parent proceeded pro se at the hearing on father's motion to modify support.

"best prospect" was to "get a job through a temp agency," as this was how he had obtained his prior position.

{¶9} Father testified that although the shared parenting plan provided for the parents to have equal time with H.G., one week on and one week off, H.G. never spent more than one weekend a month with mother. He further testified that N.G. had spent no more than two weekends with mother in the past year. He also claimed that mother had failed to pay her share of the children's school fees and expenses, including her share of a $900 school Disney World trip for N.G.

{¶10} Mother testified that she is employed as a respiratory/pulmonary function therapist technologist at the Cleveland Clinic and that she provides health insurance coverage for the children through her employment. She testified that when the parties first divorced, they followed the alternating week schedule set forth in the shared parenting agreement for H.G. She further testified that after she remarried and moved to Mentor in December 2015, it made more sense for H.G. to stay with father during the week because H.G. was very involved in band activities at school and all of her friends were in North Olmsted. Mother explained that she also missed some weekend visitation with H.G. due to mother's medical issues.

{¶11} Mother testified that she provides all transportation for her parenting time with H.G. and disputed father's claim that she did not pay her share of the children's school expenses. She testified that while father paid for N.G.'s Walt Disney trip, she gave N.G. $200 for his expenses. She further testified that she paid $375 for H.G.'s

school trip to Washington, D.C., certain of her band expenses, H.G.'s glasses and other noncovered medical expenses for which she was not reimbursed by father. She testified that she also worked "volunteer hours" at the school, which reduced the cost of N.G.'s trip and the cost of H.G.'s band uniform. Mother stated that she has continuing medical expenses and that she paid an average of $337 per month for noncovered medical expenses and prescription costs in 2016.

{¶12} At the hearing, father and mother each introduced one exhibit. Father's exhibit consisted of copies of paystubs from Superior Roll Forming for the periods ending December 13, 2015 and December 25, 2016, additional paystubs from Superior Roll Forming from March to June 2016, a W-2 form for 2016, his federal income tax returns for 2014, 2015 and 2016, a post-decree affidavit of income and expenses and a proposed child support worksheet. Mother's exhibit consisted of paystubs from the Cleveland Clinic for December 29, 2016 to March 9, 2017, a summary of her benefit elections and costs (including health insurance coverage information), a W-2 form for 2016, her federal income tax returns for 2014 to 2016, select medical records, a post-decree affidavit of income and expenses and a proposed child support worksheet.[4]

---

[4] The proposed child support worksheets father and mother submitted as part of their exhibits at the April 28, 2017 hearing were not included in the record received by this court on appeal. Likewise, the copy of father's 2014 federal income tax return in the record was incomplete. This court, sua sponte, ordered appellant to supplement the record with complete copies of (1) the proposed child support worksheet and 2014 federal income tax return that were included in father's Exhibit A and (2) the proposed child support worksheet that was included in mother's Exhibit 1. On August 17, 2018, father filed copies of his 2014 federal income tax return and a proposed child support worksheet dated February 9, 2017. The proposed child support worksheet submitted was unsigned.

{¶13} In their closing statements, father asserted that his former attorney had submitted a proposed child support worksheet which calculated mother's monthly support obligation as $730 for N.G. and H.G. He argued that mother should be required to pay $730 per month as retroactive child support for N.G. and H.G. and $584 per month in child support for H.G. following N.G.'s emancipation.[5]

{¶14} Mother requested a downward deviation of $200 per month from the standard child support obligation calculated under the child support guidelines due to her ability to provide suitable housing and her out-of-pocket medical expenses and prescription costs.[6]

{¶15} On June 27, 2017, the magistrate issued his decision. The magistrate granted father's motion to modify child support, increasing the amount of child support mother was required to pay from $66.67 per child per month ($133.34 per month total) to (1) $272.11 per child per month ($544.22 per month total) as child support for N.G. and H.G. for the time period May 17, 2016 to June 3, 2017 and (2) $384.83 per month as child support for H.G. effective June 4, 2017.

{¶16} Concluding that the total earnings listed on the parties' paystubs included contributions by their employers for health insurance benefits that were "not actual cash

For purposes of appeal, we assume this is a copy of the proposed child support worksheet that was admitted at the hearing as part of father's Exhibit A

[5] N.G. became emancipated on June 3, 2017.

[6] The parties agreed that the justification for the deviation previously granted as "an offset on the house" no longer applied.

available for purposes of child support," the magistrate used the amounts listed as social security wages on the parties' W-2 forms in calculating the parties' child support obligations, believing it to be "the fairest determination of income for purposes of completing the child support computation worksheet."

**{¶17}** Although the magistrate found that father had lost his job and "fallen on a difficult period," he also found that father had "created this dilemma" himself by being habitually late to work. The magistrate, therefore, used information regarding father's earnings in 2016, when he was still employed by Superior Roll Forming, in calculating the parties' child support obligations. The magistrate found that father had a total gross income of $51,158.62 in 2016 and that mother had a total gross income of $48,955.48 in 2016.

**{¶18}** Using this information, the magistrate completed two child support computation worksheets (1) for N.G. and H.G. for the time period May 17, 2016 (when father filed his motion to modify support) until June 3, 2017 (the date N.G. graduated from high school) and (2) for H.G. after N.G.'s emancipation (effective June 4, 2017). Although the paystubs submitted by the parties suggest that both mother and father's 2016 earnings included at least some overtime, the magistrate did not distinguish between the parties' regular earnings and overtime earnings when calculating the parties' child support obligations using the applicable child support computation worksheet. The

magistrate included all overtime earnings as annual gross income under section 1a of the child support computation worksheet.

**{¶19}** The magistrate calculated the mother's standard support obligation under the child support computation worksheet as $579.22 per month ($6,950.68 annually) when providing support for N.G. and H.G. and $419.83 per month ($5,037.95 annually) when providing support for only H.G. Given that the calculated child support amount was more than 10 percent greater than the existing child support order, the magistrate concluded that a substantial change in circumstances had occurred that warranted modification of the existing child support order.

**{¶20}** The magistrate rejected mother's request for a deviation based on her parenting time and ability to maintain suitable housing but granted a downward deviation of $35 per month for the transportation costs she incurred in exercising her visitation with H.G. retroactive to the date father filed his motion to modify child support. The magistrate also rejected mother's request for a deviation based on her personal medical expenses but considered the "strain on [mother's] finances" resulting from those expenses as grounds to "rebut the statutory re-payment of 20 percent on the retroactive child support arrearage" and ordered her to pay an additional $25 per month towards the retroactive arrearage ($409.83 per month in total) until the balance was paid in full.

**{¶21}** On July 3, 2017, mother withdrew her motion to show cause without prejudice.

{¶22} Father filed objections to the magistrate's decision. On August 29, 2017, the trial court overruled the father's objections and adopted the magistrate's decision without modification.

{¶23} Father appealed. On January 16, 2018, this court, sua sponte, dismissed the appeal for lack of a final appealable order because the trial court had failed to issue an entry that separately set forth the trial court's own judgment. On January 24, 2018, the trial court issued a new, separate judgment entry. This court then granted father's motion to reinstate the appeal.

{¶24} In his appeal, father raises the following six assignments of error (which he designates as "contentions") for review:

Contention #1:
[T]he court of domestic relations disregards procedural due process.

Contention #2:
[T]he court of domestic relations disregarded Ohio Rules of Civil Procedures [sic].

Contention #3:
[T]he court of domestic relations disregards Ohio Revised Code.

Contention #4:
[T]he court of domestic relations disregards the best interest of the child.

Contention #5:
[T]he court of domestic relations places an unequal value on volunteer services.

Contention #6:
[T]he use of "Pro se" standard disregards any justification for it.

{¶25} For ease of discussion, we address father's assignments of error out of order and together where appropriate.

**Law and Analysis**

**Standard of Review**

{¶26} We review a trial court's decision on matters of child support for abuse of discretion. *Morrow v. Becker,* 138 Ohio St.3d 11, 2013-Ohio-4542, 3 N.E.3d 144, ¶ 9. Under an abuse of discretion standard, the trial court's decision will be reversed only if it is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983); *see also In re C.A.S.*, 8th Dist. Cuyahoga Nos. 104052 and 104054, 2016-Ohio-5633, ¶ 17 (abuse of discretion "'describ[es] a judgment neither comporting with the record, nor reason.'"), quoting *Klayman v. Luck*, 8th Dist. Cuyahoga Nos. 97074 and 97075, 2012-Ohio-3354, ¶ 12; *In re K.R.B.*, 2017-Ohio-7071, 95 N.E.3d 799, ¶ 16 (8th Dist.).

**Modification of Mother's Child Support Obligation**
**Calculation of Gross Income**

{¶27} We address father's third assignment of error first. In his third assignment of error, father argues that the magistrate improperly calculated the parties' gross income when completing the child support computation worksheets. Specifically, father contends that the trial court erred in (1) including all of the overtime he earned in 2016 in his annual gross income and (2) using the parties' social security wages when calculating the parties' annual gross income.

{¶28} The starting point in calculating a parent's child support obligation is parental income, i.e., "gross income" for those who are employed to full capacity or gross income plus potential income for those who are not employed to full capacity. *See, e.g., Bodrock v. Bodrock*, 8th Dist. Cuyahoga No. 104177, 2016-Ohio-5852, ¶ 10, citing *Morrow*, 138 Ohio St.3d 11, 2013-Ohio-4542, 3 N.E.3d 144, at ¶ 11, and *Serra v. Serra*, 10th Dist. Franklin No. 15AP-528, 2016-Ohio-950, ¶ 9._ For purposes of calculating child support, "gross income" is defined in R.C. 3119.01(C)(7). in relevant part as follows:

> "Gross income" means, except as excluded in division (C)(7) of this section, the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income_from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; social security benefits, including retirement, disability, and survivor benefits that are not means-tested; workers' compensation benefits; unemployment insurance benefits; disability insurance benefits; benefits that are not means-tested and that are received by and in the possession of the veteran who is the beneficiary for any service-connected disability under a program or law administered by the United States department of veterans' affairs or veterans' administration; spousal support actually received; and all other sources of income.
>
> * * *

R.C. 3119.05(A) requires that parents' incomes "be verified by electronic means or with suitable documents, including * * * paystubs, employer statements, * * * tax returns, and all supporting documentation and schedules for the tax returns."

{¶29} The determination of gross income is a factual finding, which is subject to review on appeal to determine whether it is supported by competent, credible evidence in the record. *Bodrock* at ¶ 12, citing *Serra* at ¶ 10, and *Jajola v. Jajola*, 8th Dist. Cuyahoga No. 83131, 2004-Ohio-370, ¶ 8.

**Overtime Earnings**

{¶30} Father argues that the magistrate erred in including all of his 2016 overtime as gross income when calculating the parties' child support obligations. He contends that the magistrate should have, instead, used the three-year average of his overtime. R.C. 3119.05(D) provides:

> When the court * * * calculates the gross income of a parent, it shall include the lesser of the following as income from overtime and bonuses:
>
> (1) The yearly average of all overtime, commissions, and bonuses received during the three years immediately prior to the time when the person's child support obligation is being computed;
>
> (2) The total overtime, commissions, and bonuses received during the year immediately prior to the time when the person's child support obligation is being computed.

The child support computation worksheet tracks this language and provides for the inclusion of overtime pay as determined by these methods in annual gross income "if there exists a reasonable expectation that the total earnings from overtime and/or bonuses during the current calendar year will meet or exceed the amount that is the lower of the average of the three years or the [last calendar year] amount."

{¶31} As evidence of his income, father submitted his paystubs from Superior Roll Forming for the period ending December 13, 2015 and December 25, 2016, various other paystubs from Superior Roll Forming from March to June 2016, his W-2 from 2016 and his tax returns from 2014 to 2016. Father's paystub for the time period ending December 24, 2016 shows total "gross earnings" of $53,290.96, broken down into 11 different "earnings" categories — 401ER, ATTEN, DLFE, DT, GNSHR, HOL, OT, PTO, REG, RETRO and SHFT. It also includes several handwritten notes, including the following:

> I worked my a** off.
> 47 Saturdays worked
> 31 Sundays worked
> 5 Saturday[s] off work
> 21 Sundays off
> 10 vacation days
> 36 days off total 329 days worked

Father's paystubs from 2016 list his hourly rate as $14.03 or $15.54. His 2016 federal tax return lists $50,086 in total "[w]ages, salaries, tips, etc."

{¶32} Father's paystub for the period ending December 13, 2015 similarly shows total "gross earnings" of $21,292.64 broken down into 11 different earnings categories — 401ER, ATTEN, BONUS, DLFE, DT, GNSHR, HOL, OT, PTO, REG and SHFT. It lists his hourly rate as $14.03. It also includes a handwritten note: "No Double Time (Sundays) offered in 2015. No Overtime until Oct, started being offered at end of the

year." His 2015 federal income tax return reports $30,986 in total "[w]ages, salaries, tips, etc."[7]

{¶33} Father's 2014 federal income tax return reports $12,702 in total income. The source of this income is not clear from the record. No paystubs or W-2s were introduced from 2014 and father offered no testimony regarding where he was working in 2014 or the source(s) of his income in 2014.

{¶34} As the magistrate pointed out in his decision, father offered no testimony or other evidence explaining the different pay categories referenced on his paystubs, or specifically, what portion of his earnings constituted overtime or bonuses. On the proposed child support worksheet father submitted, dated February 9, 2017, he listed $31,117 as his annual gross income. It is not clear from the record how this sum was calculated. Although father testified that he earned overtime in both 2015 and 2016, and it appears from the documentation submitted (listing his hourly rate) that father earned a substantial amount of overtime or bonuses in 2015 and 2016, in section 1b of his proposed child support worksheet, he listed "0.00" as the "[a]mount of overtime, bonuses, and commissions" for each of the last three years. The trial court, therefore, could only speculate as to the specific overtime and bonus component included in his earnings during these years. Father did not offer any testimony or other evidence regarding

_____

[7] It is not clear from the record what accounts for the $9,693.36 difference in earnings between the $30,986 in total "[w]ages, salaries, tips, etc." reported on father's 2015 federal income tax return and the $21,292.64 listed on the December 2015 paystub. Copies of the W-2 forms associated with father's 2015 federal tax returns were not submitted.

whether he could reasonably expect to earn similar overtime or bonuses based on his job prospects in the future.

**{¶35}** As such, the trial court did not abuse its discretion in failing to use the three-year average of father's overtime and bonuses when calculating his gross income. *See, e.g., Worley v. Worley*, 5th Dist. Licking No. 06-CA-63, 2007-Ohio-252, ¶ 6-13 (where father failed to provide trial court with evidence relative to his income or overtime for the three previous years and only guessed as to the overtime component included in his income, trial court was "free to rely on the evidence presented" and did not err in including overtime pay in father's gross income when calculating his child support obligation under R.C. 3119.05(D)); *Lanzillotta v. Lanzillotta*, 1st Dist. Hamilton Nos. C-120796 and C-120835, 2013-Ohio-4050, ¶ 18-23 (where record was clear that mother had earned a substantial amount of overtime in year in which child support obligation was being computed and provided no evidence other than her testimony that the overtime was not likely to occur in the future, trial court was required to include mother's overtime pay in calculating her gross income); *see also Wildman v. Wildman*, 5th Dist. Licking No. 12-CA-21, 2012-Ohio-5090, ¶ 16-21) (where father did not provide any information regarding his bonus and overtime income from 2008 to 2010, forcing trial court to rely on a 2011 paystub, trial court did not err in extrapolating defendant's gross income under R.C. 3119.01(C)(7) based on the limited evidence provided); *Benjelloun v. Benjelloun*, 12th Dist. Butler No. CA2012-01-004, 2012-Ohio-5353, ¶ 11-15 (trial court was required to take father's bonuses into account in determining his gross income for child support

purposes where the only evidence presented, father's paystubs, indicated that he had received two bonuses in 2011 with the possibility of receiving a third).

**Use of Social Security Wages in Calculating Gross Income**

**{¶36}** Father also contends that the magistrate erred in using the amount listed as social security wages on the parties' 2016 W-2 form to calculate the parties' child support obligations. He contends that this was unfair because the magistrate already "compensated the [mother] for having to pay for the court ordered health care of the children" by deducting the cost of the children's health insurance on line 20 of the child support computation worksheet.

**{¶37}** As stated above, the magistrate used the amount listed as social security wages on the parties' 2016 W-2 forms in calculating the parties' gross income after determining that the total earnings listed on the parties' paystubs included their employer's contributions for their health insurance benefits.

**{¶38}** Father did not object to the magistrate's finding that the parties' total earnings as reflected on their paystubs included employer-paid health insurance contributions or to the exclusion of those amounts from the parties' gross income in calculating their child support obligations below.

**{¶39}** However, father did not specifically object to the magistrate's decision on that basis. Civ.R. 53(D)(3)(b)(iv) provides that "except_for a claim of plain error, a

party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion as required" by the rule. *See also* Civ.R. 53(D)(3)(b)(ii) ("An objection to a magistrate's decision shall be specific and state with particularity all grounds for objection.") He has, therefore, waived all but plain error._ *See, e.g., Huntington Natl. Bank v. Cade*, 8th Dist. Cuyahoga No. 103674, 2016-Ohio-4705, ¶ 9; *Huntington Natl. Bank v. Blount*, 8th Dist. Cuyahoga No. 98514, 2013-Ohio-3128, ¶ 10-11. Review for plain error is to be conducted "with the utmost caution." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997). The doctrine is limited to those "extremely rare cases" in which "exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a materially adverse effect on the character of, and public confidence in, judicial proceedings." *Id.*; *see also Citizens Bank, N.A. v. Conway*, 8th Dist. Cuyahoga No. 106315, 2018-Ohio-2229, ¶ 16. Father has not argued plain error on appeal and following our careful review of the limited record before us on this issue, we cannot say that this is the "extremely rare case" where this court is required to apply the plain error doctrine to avoid a "manifest miscarriage of justice." *See, e.g., Hahn v. Hahn*, 8th Dist. Cuyahoga No. 96984, 2012-Ohio-594, ¶ 21 (where father did not object to the portions of the magistrate's decision concerning calculation of the parties' respective incomes and order of child support and did not demonstrate that exceptional circumstances existed that required application of the plain error doctrine, father was precluded from raising claims

that the trial court erred in its calculation of the parties' income and in failing to order mother to pay child support to father on appeal); *see also Phillips v. Hostetler*, 9th Dist. Summit No. 28397, 2017-Ohio-2834, ¶ 18-21 (overruling father's assignment of error where, although father challenged his child support obligation below, he failed to raise the specific grounds he was attempting to argue on appeal below and did not argue plain error).

{¶40} Even if we were to conclude that the magistrate committed the error claimed by father, such error does not "seriously affect the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss* at syllabus. Accordingly, it does not rise to the level of plain error. *See, e.g., Hancock v. Crook*, 10th Dist. Franklin No. 14AP-332, 2014-Ohio-5106, ¶ 11; *see also Trombley v. Trombley*, 9th Dist. Medina No. 17CA0012-M, 2018-Ohio-1880, ¶ 10 (where mother did not specifically object to manner in which the magistrate calculated mother and father's income and did not argue plain error, she failed to preserve issue for appellate review); *Blevins v. Blevins*, 10th Dist. Franklin No. 14AP-175, 2014-Ohio-3933, ¶ 23-24 (appellant's claim that the trial court erred by reducing appellee's child support obligation without cause and against the best interest of the children did not raise plain error). Accordingly, we overrule father's third assignment of error.

**Deviation for Transportation Expenses**

{¶41} In his first assignment of error, father argues that the trial court erred in granting mother a $35 per month downward deviation for the transportation costs associated with mother's parenting time with H.G. because (1) mother was not exercising her parenting time with H.G. and (2) mother withdrew her motion to show cause (which alleged, in part, that father had failed to provide his one-half of the transportation for H.G.'s visitation with mother). He further argues that the trial court's decision to grant mother a downward deviation violates due process because he was "denied any chance for oral argument on the deviation." Father's arguments are meritless.

{¶42} The trial court may order child support that deviates from the amount of child support calculated under the basic child support schedule and worksheet if the court determines that it would be unjust or inappropriate and not be in the best interest of the child because of the extraordinary circumstances of the parents or any other factor set forth in R.C. 3119.23. *See* R.C. 3119.22-3119.24, 3119.79.

{¶43} "[E]xtraordinary circumstances of the parents" includes:

(1) The amount of time the children spend with each parent;

(2) The ability of each parent to maintain adequate housing for the children;

(3) Each parent's expenses, including child care expenses, school tuition, medical expenses, dental expenses, and any other expenses the court considers relevant; [and]

(4) Any other circumstances the court considers relevant.

R.C. 3119.24(B). The factors set forth in R.C. 3119.23 a court may consider in determining whether to grant a deviation include "extraordinary costs associated with parenting time" and "[a]ny other relevant factor." R.C. 3119.23(D), (P).

**{¶44}** In this case, the magistrate found the "presumed correct amount of child support" as calculated using the child support schedule and worksheets to be "unjust and inappropriate and not in the children's best interest" and granted mother a "slight downward deviation" for her transportation costs based on the following findings:

> In this case mother's request for a deviation due to the parenting time, including any extraordinary costs is seemingly not warranted for the reason that she re-located to Mentor, Ohio. It is undisputed that she exercised parenting time with [N.G.] sparingly. [H.G.] is at her home at most every-other weekend. However, it does appear that mother remains very involved in [H.G.'s] activities at school. Conversely, [mother] also is apparently providing the transportation for [H.G.]. She has a contempt motion pending against father for his alleged refusal to provide his one-half of the transportation for [H.G.] for parenting time. There is a travel expense for both travel and return from Mentor to North Olmsted. It is likely 40 miles each way, which would equate to 160 miles every other weekend when mother is exercising her parenting time, where she is solely providing the transportation or about 320 miles per month with two-weekend parenting time. That is approximately one-tank of gasoline and wear and tear or about $35.00 per month. It would be about one half of that expense if father was providing his one-half share of the parenting time. A $35.00 per month deviation is appropriate in this regard. It also would be appropriate to apply same retroactive to the date of filing of the motion.

In ruling on father's objections to the magistrate's decision, the trial court found that these findings were "fully supported by the evidence."

**{¶45}** On the record before us, we cannot say that the trial court abused its discretion in granting mother a $35 per month downward deviation for the transportation

costs she incurred in exercising her visitation with H.G. Mother testified that H.G. generally spent one or two weekends a month with her and that she provided the transportation for both ways from father's house in North Olmsted to mother's house in Mentor. The magistrate's findings are supported by competent, credible evidence in the record.

{¶46} With respect to father's due process argument, the record reflects that father had an opportunity to present his own evidence relevant to his motion to modify child support as well as an opportunity to cross-examine mother regarding her testimony. He also had an opportunity to present a closing argument at the hearing and filed written objections to the magistrate's decision relating to the transportation costs issue. Those objections were fully considered and overruled by the trial court in its August 29, 2017 judgment entry. Accordingly, father has shown no violation of due process.

{¶47} Father also argues that the magistrate had "no authority" to rule on mother's motion to show cause because mother withdrew it. However, the magistrate did not rule on mother's motion to show cause. That motion had been referred to another magistrate and was not decided as part of the April 2017 hearing. Whether mother was entitled to a deviation for her transportation costs was a separate issue from whether father should be held in contempt for his alleged failure to provide one-half of the transportation for mother's visitation with H.G. (and the other issues raised in mother's motion to show cause). Simply because mother dismissed her motion to show cause after the magistrate

issued his decision did not preclude the trial court from granting a deviation for mother's transportation costs. Father's first assignment of error is overruled.

**Evidence Submitted in Support of Motion to Modify Child Support**

**{¶48}** In his second assignment of error, father complains about the length of time it took the trial court to resolve his motion to modify child support and the trial court's finding that "[t]he evidence of record is limited." He contends that the trial court violated the Ohio Rules of Civil Procedure because it "never collected the documents to make an informed decision according to * * * R.C. 3199 — calculation of child support" and that the trial court "could have fixed the lack of evidence and verified the claims made by the plaintiff" when it reviewed the magistrate's decision and ruled on his objections. Once again, father's arguments are meritless. It is not the role of the magistrate or the trial court to "collect" or present evidence in support of a party's claims. Although a trial court "may hear additional evidence" before ruling on objections to a magistrate's decision, it may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate. Civ.R. 53(D)(4)(d). No such showing was made in this case.

**{¶49}** In addition, although it may have taken the trial court longer than father would have liked to resolve his motion, we cannot say this constituted an abuse of discretion. Father's second assignment of error is overruled.

**Value of Volunteer Services**

{¶50} In his fifth assignment of error, father asserts that the trial court erred in "plac[ing] an unequal value on [the] volunteer services" mother provided in contributing towards the children's extracurricular activity expenses as compared with the $900 in cash he paid for N.G.'s Walt Disney trip. We disagree. The magistrate found that mother had participated in a program through the school, which allowed her to perform volunteer work in lieu of making certain cash payments towards the children's band expenses. The magistrate's finding is supported by competent, credible evidence in the record. There is nothing in the record that suggests that the magistrate placed an "unequal value" on this volunteer work in calculating the parties' modified child support obligations or abused its discretion in failing to order mother to pay additional child support based on father's contributions toward the children's school fees and expenses. While father testified that he paid $900 toward N.G.'s Walt Disney trip, mother testified that, in addition to the volunteer work she performed, she gave N.G. $200 toward expenses on the Disney trip, paid $375 for H.G.'s school trip to Washington, D.C. and paid for H.G.'s glasses and other noncovered medical expenses for which she was not reimbursed by father. We overrule father's fifth assignment of error.

**Accommodation for Pro Se Parties**

{¶51} In his sixth assignment of error, father challenges the trial court's application of the long-standing principle that "[p]ro se litigants are presumed to have knowledge of the law and legal procedures, and are held to the same standard as litigants who are represented by counsel." The record reflects that father originally had counsel

in this case but discharged him prior to the hearing in this matter. Father fails to explain how the trial court's application of this principle amounts to an error in this case. Accordingly, we disregard this assignment of error. App.R. 12(A)(2), 16(A).

**Father's Remaining Assignment of Error**

{¶52} In his fourth assignment of error, father reiterates certain of the arguments he made in his previous assignments of error, asserting that the trial court unfairly favored mother over the children and failed to act in the "best interest of the child." For the reasons stated above, we overrule father's fourth assignment of error.

{¶53} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas, Domestic Relations Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
EILEEN A. GALLAGHER, ADMINISTRATIVE JUDGE

TIM McCORMACK, J., and
MARY J. BOYLE, J., CONCUR